ASOCIACIÓN RESIDENTES PÓRTICOS DE GUAYNABO, recurridos, *v.* COMPAD, S.E. y F & S CONSTRUCTION, S.E., peticionarios.

*Número:* CC-2002-0871     *Resuelto:* 16 de diciembre de 2004

512

*Juan E. Náter Santana*, abogado de la parte peticionaria; *Ana Belén Frías*, abogada de la parte recurrida.

El Juez Asociado Señor Corrada Del Río emitió la opinión del Tribunal.

Nos corresponde determinar si una junta de titulares de un complejo residencial sometido al régimen de propiedad horizontal tiene capacidad jurídica para comparecer a vindicar sus derechos ante el Departamento de Asuntos del Consumidor (D.A.Co.). Nos corresponde, además, resolver cuándo comienza a transcurrir el término para presentar ante D.A.Co. una querella por vicios de construcción.

I

*Trasfondo fáctico*

En 1995 Compad, S.E. y F & S Construction, S.E. (colectivamente, Compad), tuvieron a su cargo el desarrollo y la construcción del proyecto conocido como Pórticos de Guaynabo, en el Barrio Santa Rosa III de Guaynabo. En enero de 1997 Compad completó la primera fase del proyecto y entregó cuatro de un total de diecisiete edificios proyectados, los cuales, como un todo, eventualmente formarían parte de un complejo de doscientas cuatro unidades residenciales. La mayoría de las escrituras de compraventa referentes a la primera fase del proyecto se otorga-

ron entre enero y abril de 1997, periodo durante el cual Compad ostentaba la administración interina del complejo.

Durante el referido interinato, varios titulares le presentaron a Compad reclamaciones que emanaron de carestías y desperfectos relativos a la pintura de rejas y edificios, extintores, servicios de mantenimiento y seguridad, pisos de los pasillos, estacionamientos y áreas comunes en general. En agosto de 1998 se constituyó un Comité de Transición (Comité) para escrutar los libros manejados por Compad y pautar los procedimientos necesarios para que los titulares asumieran la administración del complejo residencial. A pesar de que el Comité se lo solicitó expresamente, Compad se negó a entregar la totalidad de los libros y documentos referentes a la administración interina del complejo. En aras de que se corrigieran los defectos de construcción antes mencionados, el Comité celebró varias reuniones con Compad, tras las cuales ésta se comprometió a atender los reclamos de los titulares.

Así las cosas, los titulares de Pórticos de Guaynabo convocaron una asamblea con el propósito de elegir una Junta de Directores que velara por sus intereses y canalizara las reclamaciones de los titulares. La Junta de Directores (Junta) fue elegida el 25 de agosto de 1998.

Aun cuando la Junta requirió nuevamente a Compad que le entregara los documentos necesarios para poder asumir sus funciones formalmente, y a pesar de que así lo exige expresamente el Art. 36-A de la Ley de Propiedad Horizontal, 31 L.P.R.A. sec. 1293-1, Compad insistió en su negativa de hacer entrega del archivo. Por tal razón, a pesar de haber sido electa en noviembre de 1998, no fue hasta seis meses y medio después que la Junta pudo ejercer sus funciones en propiedad y asumir el control de la administración del complejo.

Una vez Compad cumplió con las condiciones necesarias para que la Junta pudiera asumir la administración en propiedad, se le requirió nuevamente a Compad que corri-

giera las imperfecciones y carencias que afectaban varias de las estructuras del complejo. A pesar de que Compad se había comprometido a ello, no atendió la reclamación, arguyendo que había caducado.

El 2 de septiembre de 1999 la Asociación de Residentes de Pórticos de Guaynabo, por conducto de su Junta de Directores y en representación del Consejo de Titulares, presentó ante D.A.Co. una querella por vicios de construcción contra Compad. Los titulares solicitaron que D.A.Co. ordenara a las partes querelladas a: (1) subsanar las faltas y los defectos del proyecto, y (2) compensar a los titulares por los daños y perjuicios que sufrieron como consecuencia de los actos de Compad.

El 31 de agosto de 2000, luego de la celebración de varias vistas, de una inspección ocular del complejo residencial y de haber emitido un informe en el cual hizo constar las pésimas condiciones en las que se encontraban las áreas comunales del edificio, D.A.Co. declaró *ha lugar* la querella. Resolvió que los querellados eran solidariamente responsables por las obras sin terminar y por las que adolecían de vicios de construcción, a saber: puertas de contador de electricidad sin terminar; áreas comunales que padecían de excesiva humedad, filtraciones, grietas, pisos y paredes manchadas; pasamanos descascarados; deficiencias en la verja del patio del penthouse en las áreas comunales; pared engalletada en las áreas comunes del apartamento; manchas de humedad en el techo de las áreas comunes; filtraciones en el techo de las áreas comunes; filtraciones por los bloques tragaluces de los pasillos de las áreas comunes, y marcado deterioro, incluso manchas, de casi toda la pintura del complejo residencial.[1] Ordenó que se corrigieran todos los defectos señalados.

Inconforme con dicha resolución, Compad presentó ante D.A.Co. una moción de reconsideración en la cual alegó

---

[1] Véase Informe Técnico del Departamento de Asuntos del Consumidor (D.A.Co.), 12 de noviembre de 1999, Apéndice, pág. 51.

que dicha agencia carecía de jurisdicción para atender la querella. Adujo, en apoyo de su contención, que: (1) el Consejo de Titulares no cumple con la definición de "consumidor" del correspondiente reglamento de D.A.Co.,(²) y (2) había expirado el término para instar ante D.A.Co. una reclamación por vicios de construcción.

Luego de varios incidentes procesales y tras haber transcurrido el término de noventa días que tenía D.A.Co. para emitir su determinación, Compad presentó ante el Tribunal de Apelaciones un recurso de revisión administrativa. Dicho tribunal confirmó la resolución emitida por D.A.Co.

Inconforme, Compad recurre ante nos y esboza los señalamientos de error siguientes:

> Erró el Honorable Tribunal de Circuito de Apelaciones al sostener la jurisdicción del Departamento de Asunto[s] del Consumidor sobre la querella presentada por el Consejo de Titulares.
> Erró el Honorable Tribunal de Circuito de Apelaciones al interpretar erróneamente algunos de los hechos ante su consideración y sostener todas las determinaciones de hechos formuladas en la resolución del DACO, aun cuando algunas son contrarias a la evidencia documental y testifical presentada ante dicha agencia.
> Erró el Honorable Tribunal de Circuito de Apelaciones al sostener la determinación del Departamento de Asunto[s] del Consumidor de que la acción no había caducado.
> Erró el Honorable Tribunal de Circuito de Apelaciones al sostener la determinación del Departamento de Asunto[s] del Consumidor de que la parte querellada venía obligada a reparar los techos de todos los edificios y pintar todos los defectos reclamados, contrario a lo establecido por la prueba ante su consideración y lo dispuesto en la legislación y reglamentación vigente, según interpretada por este Honorable Tribunal [Apelativo]. Petición de *certiorari*, págs. 7–8.

Mediante Resolución de 25 de junio de 2003, expedimos

---

(²) Reglamento sobre Condominios, promulgado por D.A.Co. el 27 de febrero de 1978 y presentado ante el Secretario de Estado el 3 de marzo de 1978.

el auto de *certiorari*. Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II

*Capacidad de un grupo de consumidores para presentar una querella ante D.A.Co.*

Compad aduce que D.A.Co. carece de jurisdicción para atender la querella presentada por la Asociación de Residentes de Pórticos de Guaynabo por el fundamento de que dicha agencia puede considerar únicamente las querellas presentadas por un "consumidor", según definido en la ley y reglamentos aplicables. No le asiste la razón.

La controversia medular se reduce, pues, a determinar: ¿quién puede presentar una querella ante D.A.Co.?

■ En aras de responder a dicha interrogante, es ineludible tomar en cuenta la visión comunitaria del régimen de propiedad horizontal, la cual reconoce la necesidad y la importancia de crear instituciones o mecanismos para proteger los intereses comunes de los propietarios de las unidades individuales que conforman el régimen. Precisamente por ello, el Art. 38 de la Ley de Propiedad Horizontal, 31 L.P.R.A. sec. 1293b, creó el Consejo de Titulares como órgano directivo y deliberativo de todo condominio. Cónsono con dicha función, nuestro ordenamiento inviste al Consejo de Titulares de la prerrogativa de tomar decisiones sobre todos los asuntos de interés para la comunidad y adoptar aquellas medidas necesarias para la mejor consecución de los objetivos comunes de los condóminos.

■ Conforme a los principios que inspiraron la creación del Consejo de Titulares, en *Arce v. Caribbean Home Const. Corp.*, 108 D.P.R. 225 (1978), resolvimos que el Consejo de Titulares es un sujeto de derecho que actúa con personalidad propia en el ámbito de sus finalidades y que

tiene existencia jurídica independiente de la de sus miembros. Representa, sin embargo, los intereses de un grupo de consumidores, y como consejo es, en efecto, un grupo de consumidores.

Nos ilustra sobre esta materia el comentario de Pérez Pascual, quien discute y comenta los enfoques de Albadalejo y Beltrán de Heredia, para posteriormente exponer su visión particular:

> ALBADALEJO (125) define la persona jurídica como "organización humana encaminada a la consecución de [un] fin, a la que el Derecho reconoce como miembro de la comunidad, otorgándole capacidad jurídica".
>
> "El Derecho no crea seres de la nada, sino que atribuye personalidad (además de al hombre) a ciertos entes que aprehende del campo social, entes que sin tener una realidad corporal y espiritual como aquél, sin embargo, tienen realidad social, una individualidad propia, y toman parte en la vida de la comunidad como unidades distintas e independientes (así, un municipio, un club deportivo, una sociedad anónima), de los singulares elementos que, en cada momento concreto, los componen (*los vecinos*, los socios, los accionistas), *para alcanzar determinados fines que interesan, no a un solo hombre, sino a una pluralidad de ellos, o que prácticamente sólo son conseguibles, o al menos, los son más fácilmente*, por organizaciones humanas, que por el hombre aislado."
>
> .   .   .   .   .   .   .   .   .
>
> Sin embargo, [Beltrán de Heredia], estudiando el Derecho positivo español, reconoce la existencia de alguna concesión de carácter social, y por tanto de organización colectiva, trascendente del simple individualismo cuando nos explica que del juego de los principios informadores de la comunidad, en el Derecho español, puede deducirse que los intereses actuantes en la misma son individuales, es decir, simplemente unidos a la copropiedad.
>
> .   .   .   .   .   .   .   .   .
>
> *Pero la existencia de una organización colectiva* (comenta el propio Pérez Pascual), objetivizada y realizada, *la Junta de Propietarios, dotada de personalidad jurídica, no supone la desaparición de la existencia de los propietarios considerados individualmente.* (Énfasis suplido.)(³)

---

(³) E. Pérez Pascual, *El derecho de propiedad horizontal: un ensayo sobre su estructura y naturaleza jurídica*, Madrid, Ed. Marcial Pons-Libros Jurídicos, 1974,

A base de los fundamentos antes discutidos, resulta forzoso concluir que en el caso de marras, el grupo de consumidores que, por medio del Consejo de Titulares, compareció ante D.A.Co., tenía capacidad para así hacerlo. Ahora bien, vale añadir que esto último se dramatiza en el contexto de lo dispuesto en el Art. 9 de la Ley Orgánica de D.A.Co., 3 L.P.R.A. sec. 341h, el cual dispone:

> El Secretario establecerá una división administrativa en el Departamento con el propósito de recibir, ventilar y adjudicar las querellas que por violación a las leyes, o disposiciones de las mismas, que den protección al consumidor, radiquen consumidores individuales, *grupos de consumidores* y funcionarios del Departamento u otros funcionarios del Estado Libre Asociado de Puerto Rico. (Énfasis suplido.)

■ Se desprende diáfanamente del lenguaje literal y expreso de la ley que el consumidor tiene la opción de vindicar sus derechos individualmente o como grupo. En otras palabras, la ley permite que un colectivo de consumidores vindique sus derechos ante dicha agencia administrativa.

El espíritu que informó la creación de D.A.Co. y la aprobación de su ley orgánica fue precisamente facilitar al consumidor la vindicación de sus intereses con un vehículo procesal ágil y eficiente, más costo-efectivo y que equiparara el poder de los consumidores con el de los proveedores de bienes y servicios.(4)

■ Impedir que los consumidores se agrupen para comparecer a D.A.Co. a reclamar sus derechos atentaría contra el historial legislativo de la referida ley. En este caso concreto, esto implicaría que los miembros de la Aso-

---

págs. 147, 156 y 205, citando a M. Albadalejo, *Instituciones de Derecho Civil*, Publicación del Real Colegio de España en Bolonia, Barcelona, Librería Bosch, 1960, págs. 198–199 y 207–208. Véase, del mismo autor, *La persona jurídica*, Barcelona, Librería Bosch, 1961.

(4) Véase Exposición de Motivos de la Ley Orgánica de D.A.Co., Ley Núm. 5 de 23 de abril de 1973, Leyes de Puerto Rico, págs. 16–18. Véase, además, el historial legislativo del P. del S. 508, en particular el informe Alcance del Proyecto, sometido por los presidentes de las Comisiones de Asuntos Socioeconómicos, de Gobierno, de Hacienda y de lo Jurídico-Penal.

ciación de Residentes de Pórticos de Guaynabo tuvieran que presentar querellas individualmente. Para que ningún titular se viera desprovisto del remedio administrativo aplicable, tendrían que presentarse al menos doscientas cuatro querellas ante D.A.Co. Esto indudablemente no sólo menoscabaría la política pública que persigue proteger vigorosamente los derechos de los consumidores, sino que además lesionaría los tan preciados intereses de economía procesal y el manejo eficiente de recursos públicos.

■ De manera que, ante el lenguaje literal de la Ley Orgánica de D.A.Co., en atención a la Ley de Propiedad Horizontal y su jurisprudencia interpretativa, así como del espíritu y los fines que inspiraron su aprobación, resolvemos que el Consejo de Titulares tiene capacidad para comparecer ante D.A.Co. De ahí que en el caso de marras, la Asociación de Residentes de Pórticos de Guaynabo, por conducto de su Junta de Directores y en representación del Consejo de Titulares, podía comparecer a D.A.Co. a presentar la querella objeto de este recurso.

### III

*Cómputo de los términos para reclamar por defectos o vicios de construcción*

Resuelto lo anterior, debemos determinar cuándo comienza a transcurrir el término para presentar ante D.A.Co. una querella por vicios de construcción. La respuesta a lo anterior se halla en el análisis en conjunto de varias disposiciones legales. Veamos.

■ El Art. 9 de la Ley de la Oficina del Oficial de Construcción, 17 L.P.R.A. sec. 509, la cual reglamenta las actividades de urbanizadores y constructores que se dediquen al negocio de la construcción de viviendas, dispone que incurrirá en una práctica indeseable en el negocio de la construcción de vivienda todo urbanizador o constructor que deje de corregir un defecto de construcción en una

vivienda. En particular, acerca de la controversia medular ante nuestra consideración, dicha ley dispone, en su Art. 11 (17 L.P.R.A. sec. 511), que la acción para exigir responsabilidad por vicios o defectos de construcción debe presentarse dentro de los dos años del otorgamiento de la escritura de compraventa.

■ Similares principios se recogen en el Reglamento de D.A.Co., Reglamento Núm. 2268 de 17 de agosto de 1977, conocido como Reglamento para Regular las Distintas Actividades que se Llevan a Cabo en el Negocio de la Construcción (Reglamento de la Construcción). Allí se expresa que a los defectos de construcción para los cuales no se especifique un término dentro del cual deberá notificarse al urbanizador o constructor, le aplicará un término de notificación de dos años. Sec. 10 del Reglamento de la Construcción, 10 R.P.R. sec. 250.1911. Cuando se trate de mano de obra deficiente o de determinados defectos enumerados en el Reglamento de la Construcción, éste dispone que habrá que notificar al urbanizador o constructor dentro de los seis meses de la fecha de la firma de la escritura original de compraventa. Íd.

■ De lo anterior se colige que el término prescriptivo para hacer un reclamo por vicios de construcción varía dependiendo de la naturaleza del vicio o deficiencia. Ahora bien, independientemente de cuál sea el término aplicable en cada caso, la interrogante medular es: ¿a partir de qué momento se comienzan a computar estos términos cuando el reclamo se hace por defectos en áreas comunales de un complejo sometido al régimen de propiedad horizontal?

Compad sostiene que dichos términos comienzan a transcurrir desde la fecha en que la Administración de Reglamentos y Permisos (A.R.PE.) expide el permiso de uso. No le asiste la razón.

Si como propone Compad, utilizamos la fecha de la expedición del permiso de uso como punto de partida para el referido cómputo, estaríamos acortando irrazonablemente

el periodo que tiene todo titular en un condominio para hacer sus reclamaciones por vicios de construcción. Esto último se desprende del hecho de que la fecha de la expedición del permiso de uso es requisito para proceder a la individualización del apartamento en un condominio, por lo cual su expedición es necesariamente anterior a la fecha de la firma de la escritura de compraventa. Adoptar la teoría de Compad equivaldría a establecer que el momento en que comienza a transcurrir el término para incoar la reclamación es anterior a la fecha en la que el titular adquiere el apartamento.

Por su parte, la Asociación de Residentes de Pórticos de Guaynabo aduce que cuando la reclamación se refiere a defectos en los elementos comunes del inmueble, el punto de partida para computar los referidos términos es la fecha en que la Junta de Directores adquiere el control de la administración del condominio. Coincidimos con la posición de la Asociación de Residentes. Veamos por qué.

█ La Ley de Propiedad Horizontal le exige a quien somete la propiedad al régimen de propiedad horizontal que administre interinamente y vele por el mejor funcionamiento y la conservación de los elementos comunes. La razón de ello es la clara política pública de fomentar la estabilidad del régimen de propiedad horizontal y proteger a los adquirentes de las unidades sometidas a dicho régimen.

█ De igual forma, el Reglamento sobre Condominios de D.A.Co. dispone que entre las responsabilidades del administrador interino se encuentra la administración, vigilancia, conservación, cuidado, reparación y funcionamiento de las cosas y elementos de uso común, y de los servicios generales. Sec. 15 del Reglamento sobre Condominios de D.A.Co. de 3 de marzo de 1978 (10 R.P.R. sec. 250.2043).

█ Dicha administración interina está vigente desde el momento en que el inmueble se somete al régimen de propiedad horizontal hasta el momento en que se elige

524

la primera Junta de Directores o el primer director. Sec. 14 del Reglamento sobre Condominios, 10 R.P.R. sec. 250.2042. Ello es así porque la Junta de Directores es el órgano ejecutivo que, a partir del cese de la administración interina, tiene la facultad y obligación de atender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento de los elementos comunes. Art. 38-D de la Ley de Propiedad Horizontal, 31 L.P.R.A. sec. 1293b-4.

Aunque, de ordinario, los términos que nuestro ordenamiento reconoce para reclamar por defectos o vicios de construcción se computan a partir del otorgamiento de la escritura de compraventa, es evidente que no puede ser así en lo que concierne a reclamaciones por defectos en áreas comunales en edificios sometidos al régimen de propiedad horizontal.

Resolvemos, pues, que cuando se trata de unidades sometidas al régimen de propiedad horizontal, los términos para reclamar por vicios de construcción en los elementos comunes se computan a partir del momento en que la Junta de Directores, tras su instalación, toma el control de la administración. Es en ese momento, cuando el desarrollador de un condominio cesa en sus funciones de administrador interino, que la Junta de Directores puede comenzar a ejercer, en representación de los titulares, los derechos y las reclamaciones en cuanto a vicios y defectos de construcción.

Considerar una fecha anterior a aquella en la que la Junta de Directores se constituya y tome el control de la administración, sería ilógico e injusto, pues se estaría pretendiendo que el desarrollador-administrador interino se reclame a sí mismo por vicios y defectos, ya que es él el administrador interino antes de la fecha en que se constituye la Junta de Directores.

El Art. 36-A de la Ley de Propiedad Horizontal,

*supra*, establece en lo pertinente que en la reunión en que los titulares habrán de elegir las personas que ocuparán los cargos directivos, el titular o los titulares que hasta ese momento hayan estado a cargo de la administración (fungiendo como administradores interinos) deberán entregar al Consejo de Titulares los libros de cuentas de la comunidad debidamente auditados y certificados por un contador público autorizado independiente, así como todos los fondos de la comunidad que tengan en su poder.

> La recurrente Compad, S.E., como administrador interino, tenía la responsabilidad de ser diligente en la conservación y preservación de la propiedad, cuando aún no se había constituido la Junta de Directores. Sin embargo, a pesar de que los condóminos le reclamaron oportunamente por deficiencias específicas en áreas comunes en general y ésta afirmó que llevaría a cabo las reparaciones pertinentes, nada hizo al respecto. Sentencia del Tribunal de Apelaciones de 16 de octubre de 2002, Apéndice, pág. 224.

Compad cesó de ejercer su administración interina el 10 de julio de 1999, fecha en que finalmente la Junta de Directores del Condominio Pórticos de Guaynabo pudo asumir el control de la administración de éste.

> Es pues, desde el momento en que la Junta de Directores adquiere el control de la administración del Condominio Pórticos de Guaynabo, el 10 de julio de 1999, que efectivamente estaba autorizada por ley a ejercer derechos y a instar reclamaciones en representación del Consejo de Titulares. La Junta de Directores presentó su reclamo ante el DACO el 2 de septiembre de 1999; esto es, poco más de dos (2) meses después de la fecha en que tomó el control sobre la administración del condominio.[5] Íd., pág. 225.

Por todo lo anterior, conforme a los términos de notificación establecidos por el referido reglamento para cada

---

[5] Debido a lo anterior, el Tribunal de Apelaciones actuó correctamente al disponer que debido a los hechos antes mencionados, no es preciso hacer "un desglose exhaustivo de los términos de notificación aplicables para cada uno de los defectos señalados por ser innecesario a los fines de la causa ante nuestra consideración". Sentencia del Tribunal de Apelaciones de 16 de octubre de 2002, Apéndice, pág. 222.

uno de los defectos señalados, la Junta de Directores presentó su reclamación oportunamente.

## IV

*Revisión de determinaciones de hechos de D.A.Co.*

■ Finalmente, respecto a la contención de Compad a los efectos de cuestionar las determinaciones de hechos de D.A.Co., vale decir que es norma de derecho claramente establecida que en el proceso de revisión de una decisión emitida por una agencia administrativa, los tribunales apelativos han de concederle gran peso y deferencia a la decisión administrativa en vista de la experiencia y el conocimiento especializado de la agencia. *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 D.P.R. 70 (2000); *Agosto Serrano v. F.S.E.*, 132 D.P.R. 866, 879 (1993).

■ Debemos también tener presente que los procedimientos y las decisiones de un organismo administrativo tienen a su favor una presunción de corrección y regularidad, la cual debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. *Henríquez v. Consejo Educación Superior*, 120 D.P.R. 194 (1987); *M. & B.S., Inc. v. Depto. de Agricultura*, 118 D.P.R. 319, 331 (1987). Además, debemos otorgarle deferencia a las determinaciones de los organismos si están sostenidas por evidencia sustancial que conste en el expediente administrativo. *Rivera Concepción v. A.R.Pe.*, 152 D.P.R. 116 (2000); *P.R.T.C. v. Unión Indep. Emp. Telefónicos*, 131 D.P.R. 171 (1992).

■ En atención a los criterios y principios antes esbozados, la Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, según enmendada, Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2175), al referirse al alcance de la función revisora, dispone, en lo pertinente, que las determinacio-

nes de hechos de las decisiones de las agencias serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo. *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 D.P.R. 269 (2000); *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, supra. Los tribunales, pues, en ausencia de una demostración de que las decisiones sean de naturaleza caprichosa, irrazonable o arbitraria, deberán abstenerse de intervenir con las determinaciones de las agencias administrativas. Íd.

En el caso de marras, hemos examinado los documentos que obran en autos y concluimos que la determinación de D.A.Co. está sostenida por la evidencia sustancial que obra en el expediente administrativo. Compad no ha ofrecido evidencia o alegación alguna que nos lleve a concluir que la determinación de D.A.Co. fuera irrazonable o que no estuviera fundamentada en la totalidad del récord. Considerando toda la evidencia documental que consta en el expediente, así como el informe de inspección ocular suscrito el 19 de octubre de 1999 por un técnico designado por D.A.Co., el cual no fue objetado, y a falta de evidencia sustancialmente favorable a Compad, no vemos razón para sustituir nuestro criterio por el de la agencia administrativa. De acuerdo con lo anterior, tampoco erró D.A.Co. al ordenar las reparaciones indicadas en su resolución.

En mérito de lo cual, *resolvemos que: (1) una junta de titulares de un complejo residencial sometido al régimen de propiedad horizontal ostenta capacidad jurídica para comparecer a vindicar sus derechos ante D.A.Co.*, y (2) en aquellos casos en que una junta de titulares presente una reclamación por deficiencias en la construcción, el plazo prescriptivo (según la naturaleza del vicio o la carestía que figure en la reclamación) se calculará a partir del momento en que la junta asuma el control de la administración en propiedad. En vista de ello, por los fundamentos antes es-

bozados, se confirma la sentencia dictada por el Tribunal de Apelaciones.

*Se dictará sentencia de conformidad.*