Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| MYRNA I. CORCHADO CORDERO<br>Recurrida<br><br>v.<br><br>WILFREDO PEREZ CORCHADO<br>h/n/c FREDO CONSTRUCTION<br>Recurrente | TA2025RA00066 | *Revisión Judicial* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm. ARE-2024-0006540<br><br>Sobre:<br>Contrato Obra (Construcción) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de febrero de 2026.

Comparece el señor Wilfredo Pérez Corchado (señor Pérez Corchado o recurrente) a través de recurso de revisión judicial, solicitando que revoquemos una *Resolución* emitida por el Departamento de Asuntos del Consumidor (DACo), el 5 de mayo de 2025. Mediante dicho dictamen el DACo acogió una querella instada por la señora Myrna I. Corchado Cordero (señora Corchado Cordero o recurrida) contra la señora Pérez Corchado, ordenando la resolución del contrato de construcción suscrito por las partes, junto al pago de setenta y cuatro mil quinientos setenta y tres dólares con cuarenta y ocho centavos ($74,573.48) por trabajos dejados de hacer, más quinientos dólares ($500.00) en honorarios de abogado a favor.

Juzga el recurrente que incidió el DACo al así determinar, pues no acogió un informe pericial suscrito por el propio perito de la agencia; ordenó el pago de ciertas cantidades no previstas en el contrato suscrito por las partes.

No nos persuade. La determinación administrativa recurrida resulta razonable, de modo que no se justifica nuestra intervención con el curso decisorio elegido por el DACo, corresponde *confirmar*.

**I. Resumen del tracto procesal**

El 3 de septiembre de 2024 la señora Corchado Cordero instó *Querella* ante el DACo contra el señor Pérez Corchado. Adujo que, el 9 de julio de 2024, el ingeniero Curbelo Santiago, (profesional contratado por la recurrida para inspeccionar las obras de construcción), ordenó al señor Pérez Corchado suspender los trabajos de construcción de la residencia, debido a múltiples hallazgos de deficiencias que surgieron de la inspección. Añadió que el referido ingeniero se había reunido con el señor Pérez Corchado en varias ocasiones para discutir los hallazgos y le entregó sendos informes que contenían plan de medidas correctivas, pero este último se negó a firmarlos. Sobre tales informes, se alegó que el recurrente se limitó a indicarle al ingeniero Curbelo Santiago que comenzaría a trabajar los arreglos *en dos semanas.* Además, la señora Corchado destacó en la *Querella* que el señor Pérez no tenía licencia de contratista. Junto a la querella fue incluida copia del *Contrato de construcción* suscrito por las partes, y una carta dirigida al recurrente con el resultado de la inspección realizada por el ingeniero Curbelo Santiago.

Como remedios, la recurrida solicitó al DACo que ordenara al señor Pérez Corchado la devolución del dinero por las obras no realizadas, para poder pagar un contratista que corrigiera las deficiencias en la construcción de la residencia, y continuar con el restante de las obras.

Luego de notificada la querella al señor Pérez Corchado, el 31 de octubre de 2024, un Técnico de Investigación del DACo llevó a cabo una inspección de la obra, a la cual asistieron el señor Pérez Corchado, la señora Corchado Cordero y el ingeniero Curbelo Santiago. Como resultado, dicho Técnico emitió un *Informe de Inspección,* en el que

determinó que la construcción de la residencia se encontraba sesenta por ciento (60%) terminada. La *Notificación de Informe de Inspección* fue el 18 de noviembre de 2024, advirtiéndose allí a las partes que tendrían quince (15) días, a partir del archivo en autos de la notificación, para presentar sus objeciones por escrito.

En desacuerdo con el *Informe de Inspección*, la recurrida presentó su *Objeción a Informe de Inspección* el 4 de diciembre de 2024. La señora Corchado Cordero arguyó que la construcción de la residencia en realidad se encontraba treinta y cinco por ciento (35%) terminada, debido a los múltiples hallazgos de deficiencias que dieron lugar a la paralización en la segunda etapa. Además, anejó un estimado de los costos necesarios para corregir las deficiencias en los trabajos de construcción, según determinados por el ingeniero Curbelo Santiago.

Así las cosas, el DACo citó a las partes para la celebración de una vista administrativa el 27 de enero de 2025.

En efecto, la vista fue celebrada según pautada. A esta compareció la querellante junto a su representante legal, y el querellado con su abogado. En términos de la prueba desfilada, testificaron la señora Corchado Cordero y el ingeniero Curbelo Santiago, además de presentar prueba documental. La parte querellada tuvo oportunidad de contrainterrogar a los referidos testigos.

Entonces, una vez aquilatada la prueba testifical, y sopesada la prueba documental, el 5 de mayo de 2025, el DACo emitió la *Resolución* cuya revocación nos solicita el señor Pérez Corchado. Se trata de un dictamen administrativo bien fundamentado, donde fueron enumeradas veintisiete determinaciones de hechos, para luego exponer el derecho pertinente y su aplicación. En la aplicación del derecho a los hechos nos parece resaltable que el DACo dejara constancia de que, a pesar del recurrente obligarse a ello, incumplió su obligación de terminar la

construcción de la vivienda, mostrando la segunda etapa de dicha construcción defectos que requieren corrección, y que no fueron debidamente reparados. También fue señalada en el mismo dictamen la morosidad y negligencia del recurrente que, a pesar de ser requerido por el perito de la recurrida, ingeniero Curbelo Santiago, para que corrigiera los múltiples defectos de la segunda etapa de la construcción, este hiciera caso omiso, no pudiéndose iniciar la tercera etapa de la construcción, por causa de tales defectos. En definitiva, que la labor del recurrente no fue eficiente, satisfactoria ni conforme a los usos profesionales y la calidad que cabe esperar en el campo de la construcción.

Como consecuencia, el DACo declaró *Con Lugar* la *Querella* y decretó la resolución del contrato entre las partes. Además, le ordenó al señor Pérez que pague a la señora Corchado la suma de setenta y cuatro mil quinientos setenta y tres dólares con cuarenta y ocho centavos ($74,573.48), dentro de treinta (30) días calendario, sujeto al interés legal correspondiente. Dicha suma corresponde a los veintiocho mil novecientos dólares ($28,900.00) pagados para la tercera etapa que nunca se realizó, los diez mil dólares ($10.000.00) pagados como depósito, los veintisiete mil ochocientos setenta y ocho dólares con setenta y cinco centavos ($27,878.75) de costo estimado por los trabajos de reparación, los cuatro mil ochocientos ochenta dólares ($4,880.00) incurridos por equipo y trabajos que el contratista no cubrió en la primera etapa, y los dos mil novecientos catorce dólares con setenta y tres centavos ($2,914.73) incurridos por materiales y labor para la construcción del pedestal de energía eléctrica. Adicionalmente, DACo concluyó que el recurrente había incurrido en conducta temeraria, por lo que le impuso honorarios de abogado por quinientos dólares ($500.00).

En desacuerdo, el recurrente instó una *Solicitud de Reconsideración y Determinaciones de Hechos Adicionales* ante el DACo, que no fue

atendida por la agencia dentro del término dispuesto por ley, por lo que se reputa denegada de plano.

Es así como el señor Pérez Corchado acude ante nosotros, mediante recurso de revisión judicial, señalando la comisión de los siguientes errores por el DACo:

**ERROR I-** Erró la Honorable jueza al declarar CON LUGAR la querella presentada y adjudicar el pago de $74,573.48 cuando el técnico de investigación del DACO, Edwin Rodríguez López, quien como resultado de la investigación del día 31 de octubre de 2024 llegó a la siguiente conclusión en su informe "La construcción de la casa está paralizada, y se encuentra a un 60% de construcción.

**ERROR II-** Erró la Honorable jueza al aceptar el informe de estimado de costo para corregir deficiencias de construcción que no se sustenta en el contrato entre las partes.

**ERROR III-** Erró la Honorable jueza al aceptar una Objeción al informe de Construcción redactado por el Inspector Edwin Rodríguez López luego de pasado el término de 15 días para impugnar dicho informe.

Habiéndole concedido oportunidad a la parte recurrida para presentar escrito en oposición, esta compareció mediante *Alegato*. Estamos en posición de decidir.

**II. Exposición de Derecho**

a.

El Art. 4.002 de la Ley Núm. 201-2003, Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, según enmendada, dispone que el Tribunal de Apelaciones revisará, como cuestión de derecho, las decisiones finales de los organismos y agencias administrativas que hayan sido tramitadas conforme con las disposiciones de la Ley Núm. 37-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 4 LPRA sec. 24(u). En consonancia, la Regla 56 de nuestro Reglamento provee para que este foro intermedio revise las decisiones, los reglamentos, las órdenes y las resoluciones finales dictadas por organismos o agencias administrativas. Regla 56 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025).

Es un principio reiterado que las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 893 (2008); *Matos v. Junta Examinadora,* 165 DPR 741, 754 (2005). Lo anterior se fundamenta en el conocimiento especializado y la experiencia *(expertise)* de las agencias para atender situaciones particulares sobre las cuales su ley habilitadora le confiere jurisdicción. *Assoc. Ins. Agencies, Inc. v. Com. de Seguros*, 144 DPR 425, 436 (1997); *Ind. P.R. v. J.P. y A.A.A.*, 142 DPR 656, 672-673 (1997

En este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal o tan irrazonable que implique abuso de discreción. *Oficina del Comisionado de Seguros de Puerto Rico v. Point Guard Insurance Company, Inc.,* 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. A.R.Pe.*, 152 DPR 116, 122 (2000). Esto significa que el tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. Oficina del Comisionado de Seguros*, 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias,* 160 DPR 409, 431 (2003).

En lo concerniente al alcance de la revisión judicial, la sección 4.5 de la LPAU, 3 LPRA sec. 9675, según enmendada, limita la discreción del tribunal revisor sobre las determinaciones de hecho que realiza la agencia administrativa. Como consecuencia, la revisión judicial de los tribunales

para determinar si un hecho se considera probado o no queda limitada conforme a la siguiente norma:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio. **Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo**. Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. *Íd.* (Énfasis provisto).

El Tribunal Supremo de Puerto Rico define el concepto *evidencia sustancial* como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero v. Toyota*, 163 DPR 716, 728 (2005); *Misión Ind. P.R. v. J.P., supra*, pág. 131. Además, ese alto foro ha reiterado que:

> Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial, es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 397-398 (1999); *Metropolitana S.E. v. A.R.P.e.*, 138 DPR 200, 213 (1995); *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953).

Por tal razón, es la parte que impugna la decisión administrativa la que tiene que producir evidencia de tal magnitud que conmueva la conciencia y tranquilidad del juzgador de forma que este no pueda concluir que la decisión de la agencia fue justa porque simple y sencillamente la prueba que consta en el expediente no la justifica. Ello implica que "[s]i en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor". *Domínguez v. Caguas Expressway Motors, Inc., supra*, pág. 398; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999).

b.

El DACo fue creado por virtud de la Ley Núm. 5 de 23 de abril de 1973, 3 L.P.R.A. sec. 341 *et seq.*, con el propósito primordial de proteger, vindicar e implementar los intereses y derechos de los consumidores en Puerto Rico. Este organismo fue dotado con amplias facultades para: dictar las acciones correctivas que fueren necesarias para cumplir con el mandato de su ley habilitadora de proteger a los consumidores; adjudicar las querellas que se traigan ante su consideración; conceder los remedios procedentes conforme a derecho, incluidas las compensaciones económicas, si procedieran; establecer las reglas y normas necesarias para la conducción de los procedimientos administrativos e interponer cualesquiera remedios legales que fueran necesarios para hacer efectivos los propósitos de la ley, entre otros. 3 L.P.R.A. sec. 341 (d), (g) e (i); *Suárez Figueroa v. Sabanera Real*, 173 DPR 694, 704 (2008); *Quiñones v. San Rafael Estates, S.E.*, 143 DPR 756, 765-767, 769 (1997).

El espíritu que informó la creación de DACo, y la aprobación de su ley orgánica, fue precisamente facilitar al consumidor la vindicación de sus intereses con un vehículo procesal ágil y eficiente, más costo-efectivo y que equiparara el poder de los consumidores con el de los proveedores de bienes y servicios. *Asoc. de Residentes v. Compaq, S.E.*, 163 DPR 510 (2004). Para cumplir tales fines, su sistema administrativo tiene que estar dotado de una flexibilidad mayor que la del trámite judicial ordinario, de manera que se propicie su uso eficiente por parte de personas legas. *Srio. DACO v. J. Condóminos C. Martí*, 121 DPR 807 (1988).

En consonancia, el Tribunal Supremo ha reconocido "[e]l carácter informal y flexible, que distingue a los procesos administrativos, permite que el juzgador de hechos conozca toda la información pertinente para dilucidar la controversia que tiene ante sí [...]", sin necesidad de sujetar el proceso a los moldes rígidos de dichas reglas, "[...] aunque los principios

fundamentales de las reglas procesales y de evidencia podrán utilizarse en estos procesos mientras no sean incompatibles con la naturaleza de los mismos." *J.R.T. v. Aut. de Comunicaciones*, 110 DPR 879, 884 (1981). Véase también, *Martínez v. Tribunal Superior*, 83 DPR 717, 720 (1961); *Industria Cortinera Inc. v. P.R.T.C.*, 132 DPR 654, 660 (1993).

Puesto que el objetivo de la adjudicación administrativa es proveer un sistema justo, práctico, y flexible, ha sido reconocido que las normas del debido proceso de ley no se aplicarán dentro del campo administrativo con la misma rigurosidad que se aplican dentro de la adjudicación judicial. *Almonet et al. v. Brito*, 156 DPR 475 (2002). Además, las Reglas de Evidencia, 32 LPRA Ap. VI, R. 101 *et seq*), tampoco aplicarán en las vistas administrativas de manera rigurosa, no importa la naturaleza del procedimiento. *López Santos v. Asoc. de Taxis de Cayey*, 142 DPR 109, 113 (1996); *López Vives v. Policía de Puerto Rico*, 118 DPR 219, 231 (1987). Claro, la Sección 3.13(e) de la LPAUG, supra, dispone que las Reglas de Evidencia "...no serán aplicables a las vistas administrativas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento". 3 L.P.R.A. sec. 2163.

c.

Las Reglas 104, 105 y 106 de Evidencia, 32 LPRA Ap. VI, R. 104-106, regulan el procedimiento a seguir ante la admisión o exclusión errónea de evidencia y determinan el efecto que tiene la comisión de un error de esta naturaleza sobre un dictamen. En lo pertinente a la controversia que nos ocupa, dichas reglas establecen lo siguiente:

> (a) Requisito de objeción. — La parte perjudicada por la admisión errónea de evidencia debe presentar una objeción oportuna, específica y correcta o una moción para que se elimine del récord evidencia erróneamente admitida cuando el fundamento para objetar surge con posterioridad. Si el fundamento de la objeción surge claramente del contexto del ofrecimiento de la evidencia, no será necesario aludir a tal fundamento. [...] 32 LPRA Ap VI, R. 104.

(a) Regla general. — No se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna a menos que:

(1) la parte perjudicada con la admisión o exclusión de evidencia hubiere satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104 y

(2) el Tribunal que considera el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita. [...] 32 LPRA Ap. VI, R. 105.

Un tribunal apelativo podrá considerar un señalamiento de error de admisión o exclusión de evidencia y revocar una sentencia o decisión, aun cuando la parte que hace el señalamiento no hubiera satisfecho los requisitos establecidos en la Regla 104, si:

(a) El error fue craso ya que no cabe duda de que fue cometido;

(b) el error fue perjudicial porque tuvo un efecto decisivo o sustancial en la sentencia o decisión cuya revocación se solicita, y

(c) el no corregirlo resulte en un fracaso de la justicia. 32 LPRA Ap. VI, R. 106.

Las citadas reglas habilitan a este foro intermedio para atender planteamientos sobre alegada admisión errónea de la prueba. En referencia a dichas reglas, nuestro Tribunal Supremo ha adoptado la doctrina de error perjudicial. A tenor, ha expresado que el error en la admisión de evidencia no acarrea revocación, a menos que —mediando oportuna y correcta objeción— el tribunal apelativo estime que el error cometido fue factor decisivo o sustancial en la sentencia o decisión objeto de revisión. *Pueblo v. Martínez Solís*, 128 DPR 135 (1991); *Pueblo v. Ruiz Bosch*, 127 DPR 762 (1991). Lo importante para determinar si el error en la admisión de prueba conlleva la revocación de la sentencia es si éste, de no haberse producido, hubiere provocado un resultado distinto. *Pueblo v. Mangual Hernández*, 111 DPR 136, 145 (1981).

**III. Aplicación del Derecho a los hechos**

a.

Mediante el primer señalamiento de error el recurrente cuestiona la cuantía que le ordenó pagar el DACo, pues, según se aduce, tal conclusión

no se sostiene a partir del contenido del *Informe de Inspección* presentado por el propio perito de la agencia administrativa. En específico, se arguye que, en el referido Informe, el perito del DACo a cargo de inspeccionar la residencia determinó que la construcción estaba completada a un sesenta por ciento (60%).

A ello opone la señora Corchado Cordero que las conclusiones alcanzadas por el DACo sobre tal asunto se encuentran sostenidas por la prueba documental (24 exhibits), y la testifical presentada en la vista administrativa, sin que el recurrente hubiese hecho referencia alguna a otra prueba que se encuentre en el expediente administrativo y sirviera para menoscabar la valoración de la prueba que hizo la agencia recurrida. Especificó, además, que, contrario a lo afirmado por el recurrente, el DACo no estableció las cantidades a ser pagadas a partir del por ciento de trabajo realizado, sino en consideración a otros elementos, como las cantidades pagadas y el costo de las correcciones por hacer como parte de las etapas incompletas.

Tiene razón la recurrida en ambos frentes. Por una parte, lo cierto es que en la *Resolución* recurrida se llevó a cabo un detallado ejercicio de determinaciones de hechos, luego de que fuera considerada la totalidad de la prueba documental y testifical que desfiló ante sí, entre esta última, la presentada a través del testimonio del perito de la recurrente, el ingeniero Curbelo Santiago. A pesar de ello, en su escrito ante nosotros el recurrente no impugna de forma alguna la prueba documental admitida como evidencia, o propone una teoría legal alterna sostenida en la evidencia que estuvo ante la atención del DACo, que tornara en *tan irrazonable, ilegal o arbitraria*[1] la decisión administrativa que ameritara nuestra intervención con lo decidido. Menos aún el recurrente incluyó una transcripción de la

---

[1] *Oficina del Comisionado de Seguros de Puerto Rico v. Point Guard Insurance Company, Inc.*, 205 DPR 1005 (2020).

prueba oral que aquilató el foro administrativo para llegar a las referidas determinaciones de hechos, y que sirvieron para explicar el remedio concedido. Según es sabido, este Tribunal de Apelaciones no puede intervenir con la apreciación de la prueba oral en ausencia de que se nos presente una transcripción de esta. *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 129 (2019), máxime cuando lo que se pretende en este caso es que sustituyamos las conclusiones del perito del DACo, que no fue llamado por el recurrente a prestar testimonio ante dicha agencia administrativa.

Valga enfatizar que, en el contexto de una revisión judicial, corresponde a la parte recurrente demostrar que la evidencia en el expediente administrativo no resulta sustancial para establecer el resultado alcanzado por la agencia recurrida, o que demuestre que existe otra prueba en dicho expediente que establezca que no estuvo justificada la decisión recurrida. *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387 (1999). Ninguna de estas circunstancias fue demostrada en el caso ante nuestra consideración, o siguiera su acercamiento a ello, a pesar de lo específica que resulta ser la *Resolución* recurrida en sus determinaciones de hechos cuando detalló los trabajos de construcción que el recurrente no realizó, y tampoco corrigió, lo que resultó en la base para la concesión de los remedios provistos.

Entonces, en su segundo señalamiento de error el recurrente esgrime que no procedía la admisión del informe de estimado de costos para corregir deficiencias presentado por la recurrida, pues, presuntamente, no se correspondía con las obligaciones contraídas por las partes en el *Contrato de Construcción*. Sin embargo, del expediente ante nuestra consideración no surge que el señor Pérez Corchado hubiese objetado la admisión de tal evidencia en la vista administrativa de manera oportuna y por un fundamento de derecho correcto, como tampoco se

argumenta que su admisión supusiera o provocara un desvarío de la justicia. Esto, de suyo, nos impide entrar a considerar el argumento sustantivo sobre la información contenida en dicha documentación *vis a vis* el contrato suscrito entre las partes. Pero, de todos modos, lo cierto es que, reiteramos, el foro administrativo tuvo ante sí extensa prueba documental para sopesar el estimado de costos para corregir las deficiencias en la construcción, y el recurrente eligió no ponernos en posición de verificar si la prueba testifical desfilada logró establecer tales costos con relación a las obligaciones contraídas por las partes en el contrato, por lo que se nos impone la deferencia hacia el dictamen administrativo acerca de ello.

En su último señalamiento de error el recurrente sostiene que la objeción al *Informe de Inspección* suscrito por el perito del DACo presentada por la recurrida fue tardía, por lo que no debió considerarse en la vista administrativa celebrada.

Este error no merece mayor elaboración, salvo manifestar que, contrario a lo sugerido, y conforme al tracto procesal, el DACo estableció que las partes tendrían quince (15) días a partir del archivo en autos de la notificación del referido *Informe* para presentar sus objeciones por escrito. La notificación del DACo a las partes a tales efectos fue emitida el 18 de noviembre de 2024, y depositada en el correo el 20 de noviembre de 2024. Por lo tanto, las partes tenían hasta el 5 de diciembre de 2024 para presentar sus objeciones. La señora Corchado Cordero presentó su *Objeción a Informe de Inspección* el 4 de diciembre de 2024, por tanto, su objeción fue instada de manera oportuna, dentro del término establecido por el DACo para tal propósito.

En definitiva, no se cometieron ninguno de los errores señalados, corresponde confirmar la determinación recurrida.

**IV. Parte dispositiva**

Por los fundamentos expuestos, *confirmamos* la *Resolución* del DACo recurrida.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

**IV. Parte dispositiva**

Por los fundamentos expuestos, *confirmamos* la *Resolución* del DACo recurrida.