Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| ALICE RODRÍGUEZ MELÉNDEZ<br>Recurrida<br><br>v.<br><br>EXPO KITCHEN & MORE DISTRIBUTORS, INC.; UNITED SURETY & INDEMNITY COMPANY<br>Recurrente | KLRA202400479 | *Revisión Judicial* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm. SAN-2022-0011247<br><br>Sobre:<br>Ley 5 de 23 de abril de 1973 |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de marzo de 2025.

Comparece Expokitchen & More Distributors, Inc. (Expo Kitchen o parte recurrente), solicitando que revoquemos la *Resolución* emitida el 18 de junio de 2024 por el Departamento de Asuntos del Consumidor (el DACo). Mediante dicho dictamen el DACo declaró *Ha Lugar* la *Querella* instada por la señora Alice Rodríguez Meléndez (señora Rodríguez Meléndez o parte recurrida), en contra de Expo Kitchen, en la que se reclamó la indemnización por la instalación de una cocina defectuosa.

En su comparecencia ante nosotros, Expo Kitchen esencialmente alza señalamientos de error relativos a la evaluación de la prueba que hizo el DACo para alcanzar sus determinaciones de hechos y posterior aplicación del Derecho. Sin embargo, examinada la argumentación de la parte recurrente, junto a la prueba desfilada ante el DACo, adelantamos que no hemos sido movidos para intervenir con la deferencia que acompaña a las determinaciones administrativas bajo nuestra revisión, y por ello *confirmamos*.

NÚMERO IDENTIFICADOR

SEN2025_____

## I. Resumen del tracto procesal

El 6 de abril de 2022, la señora Rodríguez Meléndez presentó una *Querella* por derecho propio ante el DACo, aduciendo que en octubre de 2021 se había completado la fabricación e instalación de fascias y gabinetes de cocina por Expo Kitchen, pero dicho trabajo mostró una serie de irregularidades. A renglón seguido, la querellante pasó a enumerar los defectos en la obra realizada, incluyendo detalles sobre gavetas y puertas desalineadas, y un declive en el panel de cuarzo en el fregadero, por los cuales solicitó que el DACo ordenara su corrección a Expo Kitchen.

Tras varios incidentes, el 1 de diciembre de 2022, el DACo emitió una *Citación de Inspección-Emendada* para el 11 de enero de 2023. Por causa de tal citación, el inspector del DACo, Luis F. Vega Fernández (inspector Vega Fernández), realizó la primera inspección de la residencia de la parte recurrida, y señaló las siguientes deficiencias:

1. La isla muestra descuadre en montura de puertas y gavetas. Laminado se observa poroso y sin brillo. La parte querellante reemplazó por su cuenta laminado de fascia inferior.
2. Lacena muestra descuadre de montura de puertas, leve descuadre en zócalo superior, tablillas internas muestran descuadre y las mismas se deslizan con dificultad, botella y/o sujetador requiere ajuste.
3. Módulo superior central muestra leve descuadre en montura de puertas, falta aplicación de "caulking" para cubrir "gap" en borde superior de aproximadamente ¼ pulgada.
4. Módulo central superior muestra leve descuadre en montura de puertas.
5. Módulo central inferior, que alberga el fregadero muestra leve descuadre en montura de puertas.
6. Gabinetes en general carecen de labor final de limpieza y terminaciones. Superficie del laminado se observa sin brillo.[1]

Como resultado de los hallazgos enumerados, el referido inspector le sugirió a la señora Rodríguez Meléndez que enmendara la *Querella* para que detallara específicamente sus reclamos. Además, luego de la

---

[1] Transcripción de la Vista Administrativa, pág. 121 y Anejo XI del recurso de *revisión judicial*, págs. 74.

inspección, las partes llegaron a un acuerdo para que Expo Kitchen corrigiera los desperfectos mencionados, acordándose una re-inspección para el 15 de febrero de 2023.[2]

El 18 de enero de 2023, la parte recurrida presentó una *Enmienda a la Querella*, detallando su disconformidad con el trabajo de los gabinetes de la cocina, la fascia y la *kitchenette*. En específico, identificó que: los laminados, puertas y gavetas estaban desalineadas; problemas con el uso de las puertas de los gabinetes; declive en el tope de cuarzo del área del fregadero; malas terminaciones, entre otras.

El 15 de febrero de 2023, como había sido pautado, el inspector Vega Fernández se personó a la residencia de la parte recurrida y realizó la segunda inspección, emitiendo los siguientes hallazgos:

> 1. La isla muestra leve descuadre en alineación de los filos. Borde alrededor del tope muestra aplicación de silicón en los filos. Este trabajo fue realizado por un tercero que contrató la parte querellante.
> 2. La lacena fue intervenida y muestra leve descuadre en montura de puertas.
> 3. Módulo central superior fue corregido.
> 4. Módulo inferior que alberga el fregadero muestra leve descuadre en montura de puertas.
> 5. Moldura de módulo superior no fue intervenida por razón de que la parte querellante no lo permitió.
> 6. La fascia superior no fue intervenida, la cual muestra ondulaciones no perceptibles a simple vista, si no con la colocación de una escuadra en la superficie.
> 7. Laminados en general se observa con brillo.[3]

No obstante, mediante moción al DACo, la señora Rodríguez Meléndez objetó las conclusiones de las inspecciones realizadas por el inspector Vega Fernández, de quien, además, solicitó la inhibición en el resto de los procesos. Específicamente, fue objetada: la caracterización del inspector sobre los desperfectos como *leve;* que el inspector no tenía el peritaje necesario para poder llevar a cabo la inspección; que no se incluyó en el informe pericial defectos evidentes que se podían observar a simple

---

[2] Anejo VII del recurso de *revisión judicial*, págs. 70-71 y Anejo XI del recurso de *revisión administrativa*, págs. 74-75.
[3] Anejo XI del recurso de *revisión judicial*, págs. 75.

vista; y que el inspector se mostraba de parte de Expo Kitchen, pues escuchaba y tomaba en consideración todo lo que la parte decía. Finalmente, la señora Rodríguez Meléndez le solicitó al DACo una nueva inspección en la que se tomara en consideración su versión.

El 23 de mayo de 2023, el DACo atendió la solicitud de la señora Rodríguez Meléndez para que se realizara una nueva inspección, acogiéndola, para cuyos fines emitió una citación.

En cumplimiento, la inspección se realizó el 2 de agosto de 2023, por un nuevo inspector, el señor Edgardo Amador Acevedo (inspector Amador Acevedo), quien emitió los siguientes hallazgos:

> De la visita de inspección realizada se desprende de un contrato que se otorgó Expokitchen & more inc. que el costo total del servicio sumaria la cantidad de $13, 915.20.
> Para remodelar cocina con un techo tipo facial con un visible deterioro estético, adicional a los muebles de cocina, gavetas y puerta con múltiples deficiencias en medidas desproporcionadas, desde la fabricación, ensamblaje, instalación en relativamente todo el gabinete, aparte de un módulo en cuarto exterior con irregularidades y deficiencias con dificultar para el uso y disfrute diario
> Surge de las alegaciones y luego del servicio de la instalación, la media isla fue removida sin recomendaciones del ebanista quien dio el servicio de Instalación final, Querellante acudió al auxilio de otra compañía para remoción, instalación de losa teniendo que remover el diseño de la media isla de la cocina, para instalación de losa en el área entre sala y cocina de la residencia, sufriendo daños la media isla por la participación del equipo de trabajo para instalación de losas.[4]

Asimismo, emitió la siguiente opinión pericial:

>   Muchas irregularidades deficiencias deben de ser corregidas en la fascia en todo el cuadriculado, los gabinetes, desde gavetas, puertas que tienen un visible deterior de medidas desproporcionada en relativamente todo el mueble de cocina y cuarto exterior con modulo instalado.
>   Se recomienda la remoción del gabinete de cocina, de igual forma el módulo de dos puertas y 6 gavetas del cuarto de huéspedes exterior en su totalidad, para que sea alineado de forma equilibrada, proporcionalmente lo más exacta posible en sus medidas.
>   De igual forma la fascia tiene un tipo de trabajo con visible deterioro estético que no cumple con la expectativa según acuerdo de contrato.
>   Se requiere un trabajo de corrección total, eficiente y de calidad con una estética

---

[4] Anejo XIV del recurso de *revisión judicial*, págs. 111-113.

Uniforme fiel y exacta para garantizar un trabajo firme y presentable, proporcional a sus Medidas más exactas que no choque la visibilidad estética de una cocina recién remodelada.

O la remoción de los tres productos y el rembolso de la cantidad envuelta.

Sin embargo, se provee un estimado de reparación en caso a que los querellados no reparen dichas deficiencias.

Contrato, facturas, Estimados, pagos, recibos a demostrar de ser requerido.[5]

Inconforme con los hallazgos y la opinión pericial del inspector Amador Acevedo, esta vez fue Expo Kitchen quien presentó ante el DACo un escrito intitulado *Objeción al Informe de Inspección,* aseverando lo que sigue:

[…]

3. Se objeta la parte Resultados de la Inspección Hallazgos de la Construcción del informe por las siguientes razones:

a. el Informe indica que el contrato con la querellante el costo total sería $13,915.20. Dicha suma no es correcta; y no detalla el costo por cada uno de los elementos que fueron instalados a la querellante. Se aneja a la objeción como **EXHIBIT 1: copia del contrato y desglose de las cantidades que le fueron presentadas al inspector en la inspección.**

b. En los hallazgos se indica de un deterioro estético; adicional a los muebles de cocina con medidas desproporcionadas; e indica que la querellante acudió al auxilio de otra compañía para remoción, instalación de losa teniendo que remover el diseño de la media isla de la cocina para la instalación de la losa. La querellada expone que luego de la instalación final de todos los muebles objeto del contrato; la querellante decidió cambiar el piso de toda la cocina. Expokitchen instaló antes de que la querellante decidiera cambiar el piso. Fue como parte de la instalación de ese nuevo piso que terceros, contratados por la querellante, removieron la Isla y realizaron trabajos en el área de las paredes y pisos de la cocina. La intervención de terceros en toda el área de la cocina alteró los trabajos que habían sido realizados por la querellada. Se aneja a la objeción como **EXHIBIT 2: Fotos de Trabajos en residencia de Sra. Alice Rodríguez en septiembre 10, 2021**; donde se puede ver el piso que antes tenía el área de la cocina. Todo ese piso fue removido por terceros luego de que la querellante aceptara los trabajos de la querellada. **EXHIBIT 3: Fotos de daño a la Isla, luego de la instalación del piso por terceros.**

4. Se objeta la opinión pericial del informe por las siguientes razones:

---

[5] Apéndice del recurso de revisión judicial, págs. 115-118.

a. La opinión insiste en el deterioro de los gabinetes y las puertas sin tomar en consideración que esos muebles llevan más de 2 años instalados y que terceros trabajaron en el piso y paredes de toda la cocina para instalar el piso en toda la cocina; no solamente en el área de la isla.

b. La opinión pericial recomienda la remoción de todo el gabinete de la cocina y el gabinete del cuarto de huéspedes; a pesar de no detallar con suficiente especificidad cuales fueron los muebles que no están alineados y/o las razones para recomendar una remoción completa.

c. La opinión pericial indica "que se requiere trabajo de corrección total y de una calidad estética de una cocina recién remodelada" a pesar de que se le informó que la querellante cambió el piso de la cocina después de la instalación final por parte de Expokitchen; alterando así todo el trabajo e instalación aceptada previamente por la querellante. Se le está requiriendo a la querellada adaptar su trabajo a los cambios y remodelación realizados en el área con posterioridad a la instalación final.

d. La opinión pericial recomienda: la remoción del gabinete de cocina, del módulo de dos puertas y seis gavetas del cuarto de huéspedes y de la fascia sin la especificidad requerida para tal determinación; o el reembolso de cantidad envuelta y luego somete estimado de reparación; el estimado sometido le adjudica el total del costo indicado en los hallazgos; dicha suma no es correcta. Reiteramos que la opinión pericial es incorrecta pues no se ajusta a la realidad y no tomó en consideración la querellante cambió el piso de la cocina después de la instalación final por parte de Expokitchen; alterando así todo el trabajo e instalación aceptada previamente por la querellante. Se le está requiriendo a la querellada adaptar su trabajo a los cambios y remodelación realizados en el área con posterioridad a la instalación final.

5. Se objeta el estimado del informe por ser incorrecto los costos establecidos en el mismo.

6. Se objeta las Observaciones del informe por lar siguientes razones:

a. El informe de 17 de agosto de 2023 indica que la querellante ha dado oportunidad para reparar y corregir las deficiencias; pero guarda silencio sobre la existencia de una inspección el 11 de enero de 2023; una Re inspección el 15 de febrero de 2023; y un informe de inspección previo; notificado el 1 de mayo de 2023. De dicho informe surge que la querellada intentó corregir los desperfectos alegados por la querellante; pero ella insistió en sus alegaciones por lo que se refirió a la División legal para acción correspondiente. Se aneja a la objeción, como **EXHIBIT 4**: Informe de inspección notificado el 1 de mayo de 2023 y **EXHIBIT 5**: Detalle de trabajos realizados el 13 de febrero

de 2023 para corregir los hallazgos de la inspección del 11 de enero de 2023.[6]

(Énfasis en el original).

El 6 de octubre de 2023 fue enmendada nuevamente la Querella, con el propósito de incluir como parte querellada a la fiadora de Expo Kitchen, United Surety & Indemnity Co. Esta última presentó contestación a demanda.

Posteriormente, el 27 de octubre de 2023, el inspector Amador Acevedo rindió un informe enmendado en el cual, entre otros hallazgos, incluyó la siguiente opinión:

[…]

Se recomienda un trabajo de corrección total, eficiente y de calidad con una estética uniforme fiel y exacta, para garantizar un trabajo firme y presentable, proporcional a sus medidas más fieles y exactas para una cocina en remodelación. O la remoción de los tres productos y el rembolso de la cantidad envuelta. Sin embargo, se provee un estimado de reparación en caso a que los querellados no reparen dichas deficiencias.

Contrato, facturas, estimados, pagos, recibos a demostrar de ser requerido.[7]

Discrepante con el contenido del informe enmendado, Expo Kitchen presentó una *Reiteración a objeción al informe de inspección enmendado*.[8]

Luego de varios asuntos no pertinentes, el DACo citó y celebró la vista administrativa en su fondo, a la cual asistieron las partes a través de sus representantes legales. En la vista administrativa, las partes estipularon la siguiente prueba documental: el contrato suscrito entre las partes, los tres pagos realizados por la señora Rodríguez Meléndez a Expo Kitchen y la fianza. En términos de la prueba testifical, se desfilaron los testimonios de: la señora Rodríguez Meléndez; el inspector Amador Acevedo; el inspector Vega Fernández; el ebanista Edwin Rivera Nieves

---

[6] Apéndice XVI del recurso de revisión judicial, págs. 142-144.
[7] Anejo XVI del recurso de *revisión judicial*, págs. 142-114.
[8] Anejo XVII del recurso de *revisión judicial*, págs. 145-148.

(ebanista Rivera Nieves); y el señor Andrés Soto López (señor Soto López), quien trabajó en el área de la fascia.

Levantada objeción por Expo Kitchen respecto a ciertas fotos presentadas por la señora Rodríguez Meléndez como prueba de los defectos en la instalación, la juez que presidía la vista, licenciada María Marcano de León (jueza Marcano), determinó realizar una vista ocular. En efecto, dicha vista ocular se llevó a cabo el 18 de marzo de 2024, con la presencia de las partes, junto a sus abogados.

Finalmente, el 18 de junio de 2024, el DACo emitió la *Resolución* cuya revocación nos solicita Expo Kitchen, consignando las siguientes determinaciones de hechos:

1. La parte querellante del presente caso se identifica como Alice Rodriguez Meléndez, residente de Vega Baja, Puerto Rico, en adelante, la parte querellante.

2. La parte coquerellada Expo Kitchen & More Distributors, Inc., es una corporación doméstica a tenor con el Registro de Corporaciones del Departamento de Estado, está inscrita desde el 17 de enero de 2014, bajo el número de registro 334081. Su agente residente es Gettisia Rivera Oquendo.

3. La parte coquerellada Expo Kitchen & More Distributors, Inc., que se dedica a la fabricación e instalación de gabinetes de cocina, al momento de contratar con la parte querellante, estaba inscrita en el Registro de Contratistas de DACO, conforme lo exige Ley 146 del 10 de agosto de 1995.

4. La parte coquerellada United Surety & Indemnity es la fiadora de la compañía querellada Expo Kitchen & More Distributors, Inc. y expidió la fianza que requiere la Ley 446-1995.

5. El 4 de marzo de 2021, la querellante Alice Rodríguez Meléndez y la coquerellada Expo Kitchen & More Distributors, Inc., suscribieron un contrato para el diseño e instalación de gabinetes en la residencia de la querellante.

6. El contrato suscrito entre las partes incluía un "kitchenette" para una habitación destinada para el uso de la madre de la querellante y los gabinetes de la cocina de la residencia. En la habitación, se incluían los gabinetes en pvc, con tope en cuarzo fossil Nacre, tira 1 1/2, con la instalación, goznes y correderas soft close, espacio para nevera, una gaveta en área de fregadero, puertas con corte a 22, full laminado blanco brillo en el interior, conexión y fitting básico de fregadero.

7. En el caso de los gabinetes de la cocina, se contemplaban los gabinetes en pvc, tope y "backsplash" en cuarzo fossill nacre, tira 1 ½, con la instalación, goznes y correderas "soft close", correderas sistema push para gavetas bajo la estufa, puertas, herrajes, alacena, cajones extraíbles, luces, especieros, isla con tope en cascada y área para "stools".

8. El precio de los gabinetes de la habitación de la madre era de $1,260.00 y el de la cocina, de $1,220.00, para un total de $2,480.00, que con los impuestos a la venta, ascendió a $13,915.00.

9. La parte querellada requirió a la querellante un depósito del 50%, por $6,957.60, que la querellante pagó mediante cheque número 100.

10. A tenor con el contrato, la fecha de entrega e instalación de los gabinetes era aproximadamente de 18 a 20 semanas desde la fecha en que se firmara el contrato y se ofrecía una garantía de 6 meses en piezas y servicios y una garantía extendida de 6 meses sólo en servicio.

11. El 2 de octubre de 2021, las partes enmendaron el contrato, para incluir una fascia flat con spotlights 114 x 100, por el costo de $1,300.00; dos herrajes para puertas de microondas a $100 cada uno; movimiento para electricidad 220; extensión de fascia en área de pasillo 3 x 7, que incluye los spotlights; movimiento de receptáculo 110 v en área de cocina, 7 pares de correderas push y pasa cables en el área de kitchenette, por lo que el costo total del contrato ascendió a $16,022.56.

12. Los trabajos terminaron el 2 de diciembre de 2021. La parte querellante pagó el balance mediante los cheques número 101 ($4,437.86) y cheque por $4,627.10, para un total pagado de $16,022.56.

13. Luego de la instalación de los gabinetes, la querellante reclamó al querellado varios defectos entre ellos: que la fascia de la cocina quedó visiblemente descuadrada, diferencia en laminado de los gabinetes, terminaciones defectuosas, descuadre de puertas, gavetas y cajones, textura porosa del laminado, correderas de metal visibles y viradas, tope del cuarzo del fregadero tiene declive hacia la izquierda y líneas blancas en las uniones del laminado, entre otros defectos.

14. La parte querellada intervino, pero las reparaciones no resultaron satisfactorias, por lo que la querellante procedió a radicar la querella contra el coquerellado, Expo Kitchen More Distributore, Inc. La querella fue enmendada posteriormente para incluir otros defectos y a United Surety & Indemnity.

15. Como parte de los procedimientos, el Departamento citó a todas las partes a una inspección con el Investigador de Querellas Generales, Luis A. Vega Fernández. El informe sobre los hallazgos de la inspección fue notificado a las partes y objetado por la querellante, quien solicitó la inhibición del investigador de DACO, porque no tomó en consideración las alegaciones de la querella enmendada.

16. El Departamento citó el caso nuevamente a inspección, con el Sr. Edgardo Amador Acevedo. A tenor con el informe

del técnico Edgardo Amador Acevedo, los hallazgos fueron los siguientes:

**OPINIÓN PERICIAL**

Muchas irregularidades y deficiencias deben de ser corregidas en todo el cuadriculado de la fascia, gabinetes, tablillero, gavetas, puertas que tienen un visible deterioro de medidas desproporcionada en relativamente todo el mueble de cocina y cuarto exterior con módulo instalado. Se recomienda un trabajo de corrección total, eficiente y de calidad, con una estética uniforme fiel y exacta, para garantizar un trabajo firme y presentable, proporcional a sus medidas más fieles y exactas para una cocina en remodelación. O la remoción de los tres productos y el rembolso de la cantidad envuelta. Sin embargo, se provee un estimado de reparación en caso a que los querellados no reparen dichas deficiencias. Contrato, Facturas, Estimados, pagos, recibos a demostrar de ser requerido.

**ESTIMADO SUJETO A CAMBIO**

| Descripción | | | Costo |
|---|---|---|---|
| Por concepto de trabajos realizados incorrectamente, materiales y mano de obra desde .... | | | $ 13,915.20 |
| Impuesto sobre la venta y uso | 7% | | $   974.06 |
| Obrero diestro | | X | |
| | | Subtotal | $ 14,889.26 |
| | | Imprevistos 10% | $   1,488.92 |
| | | Seguros 7% | $   1,042.24 |
| | | Total | $ 17,420.42 |

17. A tenor con el testimonio del técnico Edgardo Amador Acevedo, Investigador de Querellas de Construcción de DACO éste declaró en la vista administrativa que los descuadres de las gavetas eran visibles. A preguntas del abogado de USIC, en cuanto a si las deficiencias eran reparables, el inspector indicó que "él removería los gabinetes y que como estaban los gabinetes, a su juicio, él no los aceptaría". El perito indicó que los niveles de la fascia no eran simétricos y que estaba desnivelada. En cuanto a las gavetas y las puertas, éstas presentaban deficiencias y dificultades para el uso diario. En cuanto al "kitchenette", el investigador Amador Acevedo señaló que el gavetero que conforma el mismo tenía muchas deficiencias para su uso y disfrute, y que él lo removería.

18. El Sr. Luis F. Vega Fernández, Investigador de Querellas Generales del Departamento, observó que la isla mostraba descuadre en montura de puertas y gavetas y que el laminado se observaba poroso y sin brillo. La alacena y módulos superiores e inferiores mostraban descuadre. Los gabinetes en general carecen de labor final de limpieza y terminaciones y la superficie del laminado se observaba sin brillo. El investigador de DACO encuentra que los gabinetes son funcionales.

19. Luego de la inspección del técnico de DACO, se brindó una oportunidad a la parte querellada para que reparara, pero de una inspección de seguimiento en febrero de 2023, muchos de los defectos no habían sido corregidos satisfactoriamente. Señala el técnico Luis Vega en su informe de seguimiento:

1) La isla muestra leve descuadre en alineación de los filos. Borde alrededor del tope muestra aplicación de silicón en los filos. Este trabajo fue realizado por un tercero que contrató la parte querellante.

2) La alacena fue intervenida y muestra leve descuadre en montura de puertas.

3) Módulo central superior fue corregido.

4) Módulo inferior que alberga el fregadero muestra leve descuadre en montura de puertas.

5) Moldura del módulo superior no fue intervenida por razón de que la parte querellante no lo permitió.

6) La fascia superior no fue intervenida, la cual muestra ondulaciones no perceptibles a simple vista, si no con la colocación de una escuadra en la superficie.

7) Laminados en general se observa con brillo.

Luego de la vista administrativa celebrada, el Departamento determinó llevar a cabo una vista ocular el 18 de marzo de 2024, a las 10:00 a.m., en la residencia de la parte querellante. De la inspección ocular realizada, se pudo observar el descuadre significativo de la fascia y de las gavetas, la diferencia en tonalidad del laminado de los gabinetes, terminaciones defectuosas, descuadre de puertas, gavetas y cajones, textura porosa del laminado, correderas de metal viradas, y líneas blancas en las uniones del laminado. La obra en general, muestra deficiencias, que, a nuestro juicio no son meras imperfecciones y justifican la remoción de los gabinetes.

Por tanto, el DACo declaró *Ha Lugar* la *Querella* presentada por la señora Rodríguez Meléndez, ordenando a Expo Kitchen a pagar la suma total de dieciséis mil veintidós dólares con cincuenta y seis centavos ($16,022.56), y a remover los gabinetes que instaló.

En desacuerdo, Expo Kitchen recurre ante nosotros mediante recurso de *revisión judicial*, señalando la comisión de los siguientes errores:

PRIMER SEÑALAMIENTO DE ERROR: ERRO DACO EN LA APRECIACION DE LA PRUEBA ORAL Y DOCUMENTAL PRESENTADA EN LA VISTA EVIDENCIARIA. DACO NO INCLUYO EN SUS DETERMINACIONES, HECHOS QUE SON ESENCIALES PARA LA ADJUDICACION DE LA QUERELLA. ANTES DE LA PRIMERA INSPECCION, LA QUERELLANTE HABIA CAMBIADO TODO EL SUELO DE LA COCINA Y LA ISLA A LA QUE SE LE DETALLAN DESPERFECTOS HABIA SIDO REMODELADA POR TERCEROS. ESE HECHO CONSTA EN EL INFORME DEL PRIMER INVESTIGADOR DE DACO, Y EN EL TESTIMONIO DE LA QUERELLANTE.

SEGUNDO SEÑALAMIENTO DE ERROR: ERRO DACO AL EMITIR UNA RESOLUCION QUE TIENE EL EFECTO DE DECLARAR RUINA LA TOTALIDAD DE LA CONSTRUCCION; A PESAR DE QUE ESA NO FUE LA SOLICITUD DE LA QUERELLANTE. ELLO A PESAR DE QUE TERCEROS INTERVINIERON CON EL TRABAJO REALIZADO POR LA RECURRENTE; Y A PESAR DE EXISTIR PRUEBA PERICIAL CONTRARIA. DICHA DETERMINACION NO ESTA SUSTENTADA POR PERITAJE; POR LO QUE ES CONTRARIA A DERECHO

TERCER SEÑALAMIENTO DE ERROR: ERRO DACO AL NO DETALLAR TODA LA PRUEBA DOCUMENTAL PRESENTADA POR

LAS PARTES EN LA VISTA ADMINISTRATIVA. ERRO DACO AL NO DETALLAR LOS DOCUMENTOS QUE OBRAN EN EL EXPEDIENTE; EMITIR LA RESOLUCION CON CONCLUSIONES DE HECHO NO SUSTENTADAS POR LA PRUEBA; Y CONCLUCIONES DE DERECHO QUE FUERON INCORRECTAS

Luego, presentada la transcripción oral de la prueba, el 25 de octubre de 2024, Expo Kitchen presentó *Alegato Suplementario en Apoyo a Revisión*, en la cual reiteró que DACo incidió: en la apreciación de la prueba documental y la prueba oral de la vista administrativa; al emitir una *Resolución* ordenando a que la parte recurrente pagara la suma de dieciséis mil veintidós dólares con cincuenta y seis centavos ($16,022.56) y que realizado el pago, Expo Kitchen tendría que remover los gabinetes de la residencia de la parte recurrida; las determinaciones de hechos no están sustentada en el expediente administrativo, y las conclusiones de derecho que se establecieron eran incorrectas.

Por su parte, el 25 de noviembre de 2024, la parte recurrida presentó su *Oposición al recurso*. En síntesis, la señora Rodríguez Meléndez solicitó que se sostuviera la *Resolución* recurrida, pues el DACo tuvo ante sí los testimonios de las partes, y de los dos inspectores de la agencia, que revelaron los defectos del trabajo realizado por Expo Kitchen. Es decir, esta parte dirigió su argumentación hacia la deferencia que este foro intermedio debe mostrar a las determinaciones de hechos alcanzadas por la agencia recurrida.

Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II. Exposición de Derecho

Es un principio reiterado que las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 893 (2008); *Matos v. Junta Examinadora*, 165 DPR 741, 754 (2005). Lo anterior se

fundamenta en el conocimiento especializado y la experiencia *(expertise)* sobre la materia que su ley habilitadora le confiere. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 436 (1997); *Misión Ind. PR v. J.P. y A.A.A.,* 142 DPR 656, 672-673 (1997). En virtud de lo cual, el ejercicio de revisión judicial debe deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Depto. Corrección,* 208 DPR 656, 674 (2022); *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021).

En este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.,* 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. A. R. Pe.,* 152 DPR 116, 122 (2000). Esto significa que el tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS,* 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.,* 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias,* 160 DPR 409, 431 (2003).

En lo concerniente al alcance de la revisión judicial, la sección 4.5 de la de LPAU, 3 LPRA § 9675, según enmendada, limita la discreción del tribunal revisor sobre las determinaciones de hecho que realiza la agencia administrativa. Como consecuencia, la revisión judicial de los tribunales para determinar si un hecho se considera probado o no queda limitada conforme a la siguiente norma:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio. Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia

sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. *Íd.*

El Tribunal Supremo de Puerto Rico define el concepto de evidencia sustancial como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero v. Toyota,* 163 DPR 716, 728 (2005); *Misión Ind. P.R. v. J.P.,* supra, pág. 131. Además, ese alto foro ha reiterado que:

> Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 397-398 (1999); *Metropolitana S.E. v. A.R.P.e.*, 138 DPR 200, 213 (1995); *Hilton Hotels v. Junta Salario Mínimo,* 74 DPR 670, 686 (1953).

Por tal razón, es la parte que impugna la decisión administrativa la que tiene que producir evidencia de tal magnitud que conmueva la conciencia y tranquilidad del juzgador de forma que este no pueda concluir que la decisión de la agencia fue justa porque simple y sencillamente la prueba que consta en el expediente no la justifica. Ello implica que "[s]i en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor". *Domínguez v. Caguas Expressway Motors, Inc.*, supra, pág. 398; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999). (Énfasis nuestro).

b.

El DACo fue creado por virtud de la Ley Núm. 5 de 23 de abril de 1973, 3 L.P.R.A. sec. 341 *et seq.*, con el propósito primordial de proteger, vindicar e implementar los intereses y derechos de los consumidores en Puerto Rico. Esta agencia fue dotada con amplias facultades para: dictar

las acciones correctivas que fueren necesarias para cumplir con el mandato de su ley habilitadora de proteger a los consumidores; adjudicar las querellas que se traigan ante su consideración; conceder los remedios procedentes conforme a derecho, incluidas las compensaciones económicas, si procedieran; establecer las reglas y normas necesarias para la conducción de los procedimientos administrativos e interponer cualesquiera remedios legales que fueran necesarios para hacer efectivos los propósitos de la ley, entre otros. 3 L.P.R.A. sec. 341 (d), (g) e (i); *Suárez Figueroa v. Sabanera Real, Inc.*, 173 DPR 694, 704 (2008); *Quiñones v. San Rafael Estates, S.E.*, 143 DPR 756, 765-767, 769 (1997).

El espíritu que informó la creación del DACo y la aprobación de su ley orgánica, fue precisamente facilitar al consumidor la vindicación de sus intereses con un vehículo procesal ágil y eficiente, más costo-efectivo y que equiparara el poder de los consumidores con el de los proveedores de bienes y servicios. *Residentes Pórticos v. Compad*, 163 DPR 510 (2004). Para cumplir tales fines, su sistema administrativo tiene que estar dotado de una flexibilidad mayor que la del trámite judicial ordinario, de manera que se propicie su uso eficiente por parte de personas legas. *Srio. DACO v. J. Condóminos C. Martí*, 121 DPR 807 (1988.)

En consonancia, el Tribunal Supremo ha reconocido "[e]l carácter informal y flexible, que distingue a los procesos administrativos, permite que el juzgador de hechos conozca toda la información pertinente para dilucidar la controversia que tiene ante sí […]", sin necesidad de sujetar el proceso a los moldes rígidos de dichas reglas, "[…] aunque los principios fundamentales de las reglas procesales y de evidencia podrán utilizarse en estos procesos mientras no sean incompatibles con la naturaleza de los mismos." *J.R.T. v. Aut. de Comunicaciones*, 110 DPR 879, 884 (1981). Véase también, *Martínez v. Tribunal Superior*, 83 DPR 717, 720 (1961); *Industria Cortinera Inc. v. P.R.T.C.*, 132 DPR 654, 660 (1993).

### III.  Aplicación del Derecho a los hechos

a.

El primer señalamiento de error presenta como argumento principal el supuesto silencio en la *Resolución* recurrida sobre lo que considera un hecho esencial, que la señora Rodríguez Meléndez había admitido haber remodelado todo el piso de la cocina por un tercero, antes de la primera inspección realizada por el perito del DACo, y que tales terceros alteraron la isla al realizar dicho trabajo en el piso.

Lo primero que habría que apuntar es que, contrario a los aducido en el recurso de revisión judicial, la *Resolución* recurrida sí se encargó frontalmente de rechazar la teoría legal de la parte querellada esbozada en al párrafo que precede. En lo específico, en la *Resolución* se plasmó lo siguiente:

> "Las fotos tomadas por la querellante, y que fueron admitidas en evidencia, **muestran claramente el descuadre de las puertas y gavetas, antes de que se removiera la isla, por lo que no existe relación causal entre la remoción de esta y los referidos descuadres**. **La prueba admitida estableció que lo único que se movió durante la remoción de la losa del piso fue la isla. La losa existente no se removió, sino que se instaló la nueva encima de la existente**. La losa nueva se instaló en junio de 2022".[9] (Énfasis provisto).

Por otra parte, aunque es cierto que la parte recurrida testificó en la vista administrativa que terceros removieron la isla para la instalación del piso de la cocina, también es cierto que la señora Rodríguez Meléndez testificó y presentó fotografías, admitidas en evidencia, evidenciando que antes que se moviera la isla, las puertas y las gavetas ya presentaban el descuadre. Surge además que, la parte recurrida presentó fotografías con el descuadre de las gavetas con la losa original. Cabe señalar que, las fotografías fueron tomadas desde el celular de la señora Rodríguez Meléndez y corresponden al 2 y 3 de febrero de 2022, es decir, dos (2) meses antes de la entrega de los gabinetes de la cocina y antes de la

---

[9] Apéndice I del recurso de revisión judicial, pág. 5.

instalación de las losas. Igualmente, demostró que, el cambio de losa solo se realizó en el área de la cocina y que, aun así, en el área de la *Kitchenette* se observaban cambios significativos en las medidas, los cuales afectaban el uso y la estética de la misma. Sucesivamente, evidenció que los defectos del modular de la pared que alberga el área de la nevera, no se debían al cambio de losa. Pues en esa área en específico no se instalaron las losas y, de todos modos, carecía de medidas uniformes. Finalmente, mostró fotos de los defectos en la fascia del techo.

Es decir, el foro administrativo sopesó la prueba que tuvo ante su consideración, y asignó credibilidad a la versión de la querellante en términos de que los defectos en la instalación precedieron el cambio en la isla y el trabajo sobre el piso. A lo que se unió que la propia juez que presidió la vista administrativa pudo corroborar los datos que ya había obtenido mediante la prueba presentada, mediante la vista ocular que celebró, por la cual constató las deficiencias del trabajo realizado por Expo Kitchen, sin encontrar relación causal entre el trabajo que terceros hicieron en el piso e isla, y los defectos en la instalación por Expo Kitchen.

Aunque resulte trillado, sigue siendo cierto que el foro administrativo ante el cual se desfiló la prueba está en mejor posición que este foro intermedio apelativo, que solo cuenta con fríos expedientes, para adjudicar controversias relativas a la asignación de credibilidad de la prueba testifical. Si la parte *recurrente no demuestra la existencia de otra prueba que sirva para demostrar que la actuación de la agencia no está basada en evidencia sustancial o que reduzca el valor de la evidencia impugnada, el tribunal respetará las determinaciones de hechos y no deberá sustituir el criterio de la agencia por el suyo. Otero v. Toyota,* 163 DPR 716, 728 (2005). El error no fue cometido.

b.

En el segundo señalamiento de error, la parte recurrente le imputa al DACo haberse excedido en el remedio que concedió a la señora Rodríguez Meléndez. Especificó que el DACo no debió haber ordenado la devolución económica por un producto que fue alterado por terceros antes de la primera inspección ocular, y que en la práctica declaró en ruina el trabajo realizado por Expo Kitchen, sin que ello fuera solicitado en la *Querella.*

No nos expresaremos más sobre la teoría legal de la parte querellante al atribuir los defectos en la instalación a la intervención de terceros, pues ya el asunto lo discutimos en el primer error señalado.

Entonces, atendiendo el planteamiento de que presuntamente el DACo se excedió en la concesión del remedio provisto, por una parte, sépase que en la querella *no se tienen que precisar todos los detalles de la acción, sino bosquejar la controversia y las reclamaciones*, *Otero v. Toyota*, supra, p. 737; y por la otra, la Regla 27.1 del Reglamento de Procedimientos Adjudicativos del DACo, Reglamento Núm. 8034, dispone que *toda resolución otorgará el remedio que en derecho proceda **aun cuando la parte querellante no lo haya solicitado***. (Énfasis provisto). Esto último resulta cónsono, a su vez, con la norma reiterada en el trámite ordinario ante los tribunales la cual dicta que estos habrán de conceder *el remedio que en derecho proceda, aunque ello no haya sido solicitado perfectamente. Soto López v. Colón*, 143 DPR 282, 291 (1997).

Es decir, el DACo estaba legalmente habilitado para conceder el remedio que procediera en ley, según surgiera de la prueba sustancial que conformaba el expediente administrativo. En ese ejercicio, nos resulta evidente que para diseñar el remedio concedido la juez sopesó el informe pericial del inspector Amador Acevedo, donde se detallaron las múltiples deficiencias en la fabricación e instalación realizada por la parte

querellante, que dificultan el uso de la obra a tal punto que sugirió la corrección total o la remoción de los tres (3) productos, con el reembolso de la cantidad envuelta. A esto se une, valga reiterar, que la jueza pudo corroborar mediante la vista ocular las deficiencias del trabajo que ya habían señalado los peritos del DACo, por lo que expresó lo siguiente:

> Luego de la vista administrativa celebrada, el Departamento determinó llevar a cabo una vista ocular el 18 de marzo de 2024, a las 10:00 a.m., en la residencia de la parte querellante. De la inspección ocular realizada, **se pudo observar el descuadre significativo de la fascia y de las gavetas, la diferencia en tonalidad del laminado de los gabinetes, terminaciones defectuosas, descuadre de puertas, gavetas y cajones, textura porosa del laminado, correderas de metal viradas, y líneas blancas en las uniones del laminado. La obra en general, muestra deficiencias, que, a nuestro juicio no son meras imperfecciones y justifican la remoción de los gabinetes**.[10]

Por lo tanto, reputamos la determinación sobre el remedio provisto como sostenida por la prueba sustancial existente en el expediente administrativo, sin poder tildarla de irrazonable, imponiéndosenos así la deferencia que debemos a los dictámenes administrativos.

c.

Finalmente, la parte recurrente adujo en su tercer señalamiento que incidió el DACo al: *no detallar toda la prueba documental presentada por las partes en la vista administrativa y los documentos que obran en el expediente; emitir la resolución con conclusiones de hechos no sustentadas por la prueba; y conclusiones de derecho que fueron incorrectas.*

Surge del expediente administrativo que la prueba documental que se presentó en la vista del 23 de marzo de 2024, entiéndase: el contrato suscrito entre las partes, los tres pagos realizados por la señora Rodríguez Meléndez y la fianza, fueron estipulada entre las partes. De igual forma, la señora Rodríguez Meléndez presentó veintiuna (21) fotografías para mostrar los múltiples defectos de los gabinetes, la fascia y la kitchenette.

---

[10] Anejo I del recurso de *revisión judicial*, págs. 1-7.

Por su parte, la parte recurrente objetó dichas fotografías pues adujeron que de una foto no se puede llegar a una determinación. Ante tales objeciones, la Jueza Marcano determinó hacer una vista ocular, en la cual pudo corroborar personalmente los defectos del trabajo realizado por la parte recurrente.

Cónsono con ello, la juez administrativa emitió las siguientes expresiones:

> **La prueba que obra en el expediente administrativo demuestra que el querellado incumplió su obligación al realizar un trabajo deficiente y no corregir todos los defectos de forma satisfactoria. La prueba admitida, que incluye el testimonio de la parte querellante, que nos mereció entera credibilidad, y los informes de los peritos de DACO, Sr. Edgardo Amador Acevedo y Luis Vega, corroboran que el querellado fue negligente en el cumplimiento de su obligación. La Vista ocular, permitió a la jueza administrativa corroborar que los defectos alegados por la querellante son visibles, que hay descuadre significativo en las puertas, gavetas y en la fascia, porosidad en el laminado y otros defectos, que no se tratan de meras imperfecciones que pueden esperarse de este tipo de obra.**
> **Las fotos tomadas por la querellante, y que fueron admitidas en evidencia, muestran claramente el descuadre de las puertas y gavetas, antes de que se removiera la isla, por lo que no existe relación causal entre la remoción de ésta y los referidos descuadres. La prueba admitida estableció que lo único que se movió durante la remoción de la losa del piso fue la isla.**[11]

Como hemos dicho, es la parte que impugna la decisión administrativa quien tiene que producir evidencia de tal magnitud que conmueva la conciencia y tranquilidad del juzgador de forma que este no pueda concluir que la decisión de la agencia fue justa porque simple y sencillamente la prueba que consta en el expediente no lo justifica. Ello implica que "[s]i en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor". *Domínguez v. Caguas Expressway Motors, Inc.*, supra, pág. 398; *Ramírez v. Depto. de*

---

[11] *Íd.*, pág. 5.

*Salud*, supra, a la pág. 905. (Énfasis nuestro). Ninguna de tal prueba ha aportado la parte querellante ante nosotros. Es decir, Expo Kitchen no demostró la existencia de otra prueba que nos colocara en posición de superar la deferencia que debemos al ejercicio adjudicativo razonable efectuado por el DACo. La *Resolución* recurrida mostró rigor tanto en enumerar las determinaciones de hechos alcanzadas, como en la aplicación del derecho, y las razones de la concesión del remedio elegido.

**IV. Parte dispositiva**

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, se *confirma* la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones