Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| CARMEN L. RIJOS FIGUEROA<br>Recurrida<br><br>v.<br><br>PAOMA INC. H/N/C AUTO AMIGO<br>Recurrente | KLRA202500271 | *Revisión Judicial* procedente del Departamento de Asuntos del Consumidor (DACo)<br><br>Querella Núm. SAN-2024-0019320<br><br>Sobre: Compraventa de Vehículo de Motor Ley Núm. 5 de 23 de abril de 1973 (Ley Orgánica de DACo) |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 18 de agosto de 2025.

Comparece Paoma, Inc. h/n/c Auto Amigo (Auto Amigo o parte recurrente), solicitando que revoquemos la *Resolución* emitida el 28 de febrero de 2025 por el Departamento de Asuntos del Consumidor (el DACo). Mediante dicho dictamen el DACo declaró *Ha Lugar* la Querella instada por la señora Carmen L. Rijos Figueroa (Sra. Rijos Figueroa o parte recurrida), en contra de Auto Amigo, en la que se reclamó la indemnización por la compraventa de un vehículo de motor defectuoso.

Por los fundamentos que expondremos a continuación, *Confirmamos.*

## I. Resumen del tracto procesal

El 30 de abril de 2022, la Sra. Rijos Figueroa adquirió de la parte recurrente un vehículo de motor usado marca Hyundai, modelo Santa Cruz, color gris del año 2022, por el precio de $59,490.00. El referido precio de venta fue financiado al 6.99% mediante Oriental Bank. Para tales propósitos, la parte recurrida ofreció en intercambio otros dos (2) vehículos de motor, a

Número Identificador

SEN2025_____

saber: 1) un Mitsubishi Outlander del 2020, el cual tenía un balance de liquidación de $25,897.35; y 2) una Kia Soul de 2022, la cual tenía un balance de liquidación de $27,946.37. Esto supuso un crédito de $53,843.72, que cubrió el balance de liquidación de ambos vehículos entregados en intercambio. Al momento de la compraventa, el vehículo en cuestión tenía un millaje de 4,056 millas.

Así las cosas, para mayo de 2022, a días de haber adquirido el vehículo, la Sra. Rijos Figueroa advino en conocimiento que su auto había sido chocado, tras percibir moho en el gozne de la puerta del conductor y en el interior del panel. También, estaba rota la pieza plástica en el lado izquierdo del chasis. La recurrida no fue notificada de esto por el recurrente al momento de realizar la compra. A raíz de ello, solicitó al recurrente dejar sin efecto la compraventa del vehículo de motor Hyundai, modelo Santa Cruz Limited, y que se le devolviesen los vehículos ofrecidos en intercambio. No obstante, el recurrente propuso a la recurrida pintar el área afectada, pues los autos ofrecidos en intercambio habían sido vendidos. El recurrente procedió a realizar las reparaciones y, además, le prestó a la recurrida un vehículo durante el tiempo que duró la reparación.

En marzo de 2024, en un cambio rutinario de aceite y filtro, la Sra. Rijos Figueroa alegó que el auto hacía un ruido en el área del motor al acelerarlo. Luego de la correspondiente prueba de carretera, se determinó que el ruido provenía de la transmisión, la cual fue reemplazada en garantía junto con la computadora de la transmisión. Al momento de hacer el reemplazo, el millaje del vehículo era de 15,257 millas.

Posteriormente, el 28 de junio de 2024, la Sra. Rijos Figueroa radicó una *Querella* por derecho propio ante el DACo contra el recurrente. Alegó que el vehículo adquirido era uno importado y usado, **que resultó ser impactado y reparado antes de la compraventa, y no se le notificó sobre ello**. Adujo también que los focos del vehículo se empañan cuando llueve. Asimismo, señaló que luego de la reparación de la transmisión, los sensores frontales y laterales se activaban, provocando un ruido alto. También indicó que la pieza

plástica del chasis había sido solicitada por Auto Amigo, pero no había llegado al momento de presentar la querella ante el DACo.

Como parte del proceso administrativo iniciado, el 21 de octubre de 2024, un técnico automotriz del DACo, José Torrón Martínez, realizó la inspección de la unidad. Según el *Informe de Inspección* rendido, notificado el 24 de octubre de 2024, el vehículo mostró que la pintura del bonete, parachoques delantero, guardalodos y la puerta, todos del lado del chofer, estaba repintada. Además, la inspección arrojó que la tapa-máquinas plástica superior del guardalodos del lado del chofer, estaba masticada. El técnico automotriz realizó una evaluación "D.T.C.", la cual mostró el código B1748.00, equivalente a un error de comunicación con el sensor de impacto lateral de presión del pasajero delantero.[1] Asimismo, el inspector del DACo realizó una prueba de carretera. Concluyó que el tren propulsor mostró un buen desempeño y el panel de instrumentación no mostró luces de advertencias. El perito también determinó que los defectos de la transmisión ya habían sido reparados en garantía de manufacturero, y sugirió como acción a seguir una vista administrativa.

El 11 de noviembre de 2024, el recurrente presentó su *Contestación a Querella, Exposición a Informe de Inspección y Solicitud de Desestimación*. En síntesis, negó las alegaciones de la querella en su totalidad y sostuvo que no tenía méritos, por lo que procedía desestimarla. Igualmente, se opuso a la recomendación del inspector de realizar una vista administrativa, pues, según el recurrente, el técnico automotriz no encontró desperfectos mecánicos ni de hojalatería.

A raíz de ello, el DACo señaló una Vista Administrativa para el 27 de febrero de 2025 mediante videoconferencia. Comparecieron a dicha vista el recurrente, la recurrida por derecho propio, y el técnico automotriz. En la vista administrativa, las partes estipularon la siguiente prueba documental: el contrato de compraventa de Auto Amigo, el recibo de Caribbean Auto

---

[1] Apéndice del recurso de *revisión judicial*, pág. 22.

Distributors, el acuerdo de gravamen mobiliario, el balance de cancelación de Oriental Bank sobre el vehículo Kia Soul, el balance de cancelación de Oriental Bank sobre el vehículo Mitsubishi Outlander, la solicitud para registrar vehículo de motor en el Departamento de Transportación y Obras Públicas, las Certificaciones sobre los autos ofrecidos en intercambio, el reporte de Car Fax emitido el 15 de septiembre de 2024, el desglose de Enterprise, y fotos ilustrativas de los focos.

En términos de la prueba testifical, se desfilaron los testimonios de: la recurrida, el inspector José Torrón Martínez, y el vendedor del vehículo, Efraín Alverio. El 28 de febrero de 2025, el DACo emitió la *Resolución* aquí impugnada, consignando las siguientes determinaciones de hechos:

1. La parte querellante se identifica como Carmen L. Rijos Figueroa.
2. La parte querellada Paoma, Inc., h/n/c Auto Amigo a parte querellada Auto Amigo, es una corporación organizada bajo las leyes de Puerto Rico con dirección postal, PO Box 5399, Caguas, PR, 00726.
3. Oriental Bank fue la entidad que financió la compraventa del vehículo adquirido por la querellante Carmen L. Rijos Figueroa.
4. El 30 de abril de 2022, la querellante Carmen Lydia Rijos Figueroa adquirió de la parte querellada Paoma, Inc., h/n/c Auto Amigo un vehículo de motor usado, marca Hyundai modelo Santa Cruz Limited del año 2022, color Gris, con un número de serie 5NTJEDAF5NH000426 y tablilla 1113744. El millaje del vehículo al momento de la compraventa era de 4,056 millas. [...]
5. El precio de venta al contado del vehículo fue $59,490.00. El precio fue financiado al 6.99%, a través de Oriental, a razón de 1 pago de $1,268.52 y ochenta y tres (83) pagos mensuales de $945.02, comenzando el 4 de junio de 2022. Con un total de balance principal y cantidad financiada de $62,911.00 para un balance total de diferido de $79,705.18. [...]
6. Para poder adquirir el vehículo mencionado, la querellante dio en "trade in" un vehículo Mitsubishi Outlander del 2020 con un balance de liquidación de $25,897.35 y una Kia Soul de 2022 con un balance de liquidación de $27,946.37. [...]
7. A la querellante se le dio un crédito por carros usados de $53,843.72 cubriendo el balance de liquidación de ambos carros entregados en "trade in".
8. En el mes de mayo de 2022, la querellante acudió al dealer Auto Amigo luego de que adviniera en conocimiento de que el vehículo tenía moho en el gozne de la puerta del conductor y en el panel por dentro, además la pieza plástica en el chasis lado izquierdo estaba rota.
9. El 26 de febrero de 2024, la querellante llev[ó] el vehículo Hyundai Santa Cruz del 2022 objeto de la querella a Caribbean Auto Distributors alegando ruido en el área del motor al acelerar la unidad. Se le realiz[ó] prueba de carretera y se determin[ó] ruido proviene de la transmisión. La

Transmisión y la computadora de la transmisión fueron reemplazadas en garantía. Se le proveyó a la querellante un vehículo alquilado de la compañía Enterprise durante el periodo que dur[ó] la reparación. El costo del alquiler fue asumido por Hyundai de Puerto Rico. Al momento del reemplazo de la transmisión el vehículo contaba con 15,257 millas. El vehículo fue entregado a la querellante el 25 de mayo de 2024.

10. Con la inten[c]ión de negociar su vehículo objeto de la presente querella, la querellante acudió a Avilés Auto para ver si podía cambiar el vehículo por uno eléctrico. En esa visita el dealer procedió a buscar el vehículo en Car Fax arrojando el mismo había sido chocado.

11. El 28 de junio de 2024, Carmen L. Rijos Figueroa radic[ó] la querella de epígrafe contra Auto Amigo alegando adquiri[ó] un vehículo importado usado el cual resul[ó] ser chocado y reparado y nunca se le notific[ó]. Que solicitó la cancelación del contrato y la devolución de sus vehículos a lo que el dealer se negó y solo resolvió pintando el área afectada y pidiendo la pieza rota. La querella fue notificada a las partes el 31 de julio de 2024.

12. El 15 de septiembre de 2024 se expidió copia del reporte del historial del vehículo Hyundai Santa Cruz VIN 5NTJEDAF5NH000426 según la información reportada en CARFAX. El informe indica que el vehículo sufrió un accidente el cual fue reportado el 14 de septiembre de 2021. "Accident reported with another vehicle. Functional damage reported, airbags did not deploy". "Damage to left front". El vehículo tuvo un primer dueño en la Florida antes de ser transportado el vehículo a Puerto Rico. [...]

13. El 21 de octubre de 2024 se realizó una inspección sobre el vehículo objeto de la presente querella. El informe fue notificado a las partes el 24 de octubre de 2024. Sobre las alegaciones de que el vehículo fue chocado y reparado, el informe de inspección indic[ó] entre otras cosas que "[e]l vehículo mostr[ó] pintura repintada en bonete, para choque delantero lado chofer, guardalodos chofer y puerta chofer. También observé tapa máquinas plásticas superior del guardalodos masticada".

14. La querellante adquirió un vehículo del querellado Paoma, Inc. h/n/c Auto Amigo sin tener conocimiento de que el mismo había sido chocado y reparado. Que inclusive la reparación no fue realizada correctamente encontrado que el vehículo ten[í]a moho en varias de las áreas que habían sido impactadas. **Esta información nunca le fue informada y de haberlo sabido, no hubiese realizado la compra del vehículo**.[2]

Según ya dijimos, mediante su dictamen el DACo declaró *Ha Lugar* la querella incoada por la Sra. Rijos Figueroa. Concluyó que el consentimiento de la recurrida estuvo viciado, pues se había configurado el dolo. Como remedio, ordenó a Auto Amigo a reembolsar a la recurrida el pronto y todas las mensualidades pagadas por ella a Oriental Bank hasta ese momento, a

---

[2] Apéndice del recurso de *revisión judicial,* págs. 40-41.

cuya suma le sería aplicado el interés legal, en un término no mayor de veinte (20) días. Asimismo, ordenó al recurrente, dentro del mismo término de veinte (20) días, a satisfacer a la recurrida el monto adeudado por esta a Oriental Bank y así relevarla de su deuda con la mencionada entidad financiera. Por último, dispuso que, una vez el recurrente cumpliese con lo ordenado, la recurrida debía entregar el vehículo a este para realizar el traspaso.

Luego de que la parte recurrente instara petición de reconsideración ante el DACo, que resultó denegada, acude ante nosotros mediante recurso de *revisión judicial*, señalando la comisión de los siguientes errores:

> PRIMER ERROR: EL DACO COMETIÓ ERROR AL DESCARTAR QUE ENTRE LAS PARTES OCURRIÓ TRANSACCIÓN EN CUANTO A LA POSIBLE ACCIÓN ORIGINAL AL ESTA ACUDIR AL CONCESIONARIO, Y ACEPTAR COMO OPCIÓN LA REPARACIÓN DEL VEHÍCULO DE MOTOR A SU SATISFACCIÓN.

> SEGUNDO ERROR: EL DACO COMETIÓ ERROR DE HECHO Y DE DERECHO AL NO TOMAR EN CUENTA QUE EL CONCESIONARIO CUMPLIÓ CON SU DEBER DE SANEAMIENTO AL REPARAR EL VEHÍCULO DE MOTOR, A SATISFACCIÓN DE LA QUERELLANTE.

> TERCER ERROR: EL DACO ACTUÓ CON PASIÓN PERJUICIO Y PARCIALIDAD AL DESCARTAR LA PRUEBA RECIBIDA Y ADMITIDA POR LA QUERELLANTE Y CONCEDER UN REMEDIO EXTREMO QUE NO TOMA EN CUENTA SU PROPIO REGLAMENTO.

> CUARTO ERROR: EL DACO COMETIÓ ERROR DE DERECHO PUES LA ACCIÓN REDHIBITORIA CONCEDIDA, ESTABA PRESCRITA.

> QUINTO ERROR: EL DACO COMETIÓ ERROR AL EMITIR RESOLUCIÓN QUE INCORPORA A UN TERCERO (ACREEDOR QUE FINANCIÓ EL VEHÍCULO DE MOTOR) QUE NO FORMÓ PARTE DE LOS PROCESOS NI FUE NOTIFICADO.

El 12 de mayo de 2025, le concedimos un término de veinte (20) días a la parte recurrida para que presentara su Alegato. Sin embargo, transcurrido en exceso el término concedido a la parte recurrida para que presentara su Alegato, sin que compareciera, nos corresponde resolver.

## II. Exposición de Derecho

### A. Revisión Judicial

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601

*et seq.*, dispone el alcance de la revisión judicial de las determinaciones de las agencias. Tanto la referida ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley, y si la misma es legal y razonable. *T–JAC, Inc. v. Caguas Centrum Limited*, 148 DPR 70, 80 (1999). Por esto, los tribunales apelativos han de conceder gran deferencia y consideración a las decisiones de los organismos administrativos en vista de la vasta experiencia y conocimiento especializado. *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Mun. San Juan v. Plaza Las Américas*, 169 DPR 310, 323 (2006).

Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors*, 161 DPR 69, 76 (2004). Conforme a la cual, habrá que determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción. *Mun. de San Juan v. CRIM*, 178 DPR 163, 175 (2010).

A pesar de lo anterior, lo cierto es que nuestro Tribunal Supremo ha identificado circunstancias en que corresponde no observar la referida deferencia a las resoluciones finales administrativas. En específico, dicho alto foro ha reconocido que la referida deferencia a las determinaciones administrativas cederá cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación de la ley, y (3) ha mediado una actuación irrazonable o ilegal. *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Acarón et al v. D.R.N.A.*, 186 DPR 564, 584 (2012)*; Costa Azul v. Comisión*, 170 DPR 847, 852 (2007).

*Evidencia sustancial* ha sido definida jurisprudencialmente como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Sin embargo, esta acepción no podrá estar sostenida por un ligero destello de evidencia o por simples inferencias. Así, el criterio rector en estos casos siempre estará guiado por

la razonabilidad de la determinación administrativa luego de considerar el expediente administrativo en su totalidad. *OEG v. Martínez Giraud*, supra.

## B. El DACo

El DACo fue creado por virtud de la Ley Núm. 5 de 23 de abril de 1973, 3 L.P.R.A. sec. 341 *et seq.*, con el propósito primordial de proteger, vindicar e implementar los intereses y derechos de los consumidores en Puerto Rico. Esta agencia fue dotada con amplias facultades para: dictar las acciones correctivas que fueren necesarias para cumplir con el mandato de su ley habilitadora de proteger a los consumidores; adjudicar las querellas que se traigan ante su consideración; conceder los remedios procedentes conforme a derecho, incluidas las compensaciones económicas, si procedieran; establecer las reglas y normas necesarias para la conducción de los procedimientos administrativos e interponer cualesquiera remedios legales que fueran necesarios para hacer efectivos los propósitos de la ley, entre otros. 3 L.P.R.A. sec. 341 (d), (g) e (i); *Suárez Figueroa v. Sabanera Real, Inc.*, 173 DPR 694, 704 (2008); *Quiñones v. San Rafael Estates, S.E.*, 143 DPR 756, 765-767, 769 (1997).

El espíritu que informó la creación del DACo y la aprobación de su ley orgánica, fue precisamente facilitar al consumidor la vindicación de sus intereses con un vehículo procesal ágil y eficiente, más costo-efectivo y que equiparara el poder de los consumidores con el de los proveedores de bienes y servicios. *Residentes Pórticos v. Compad*, 163 DPR 510 (2004). Para cumplir tales fines, su sistema administrativo tiene que estar dotado de una flexibilidad mayor que la del trámite judicial ordinario, de manera que se propicie su uso eficiente por parte de personas legas. Srio. *DACo v. J. Condóminos C. Martí*, 121 DPR 807 (1988.)

## C. Reglamento de Garantías de Vehículo de Motor

La Ley Núm. 5 de 23 de abril de 1973, según enmendada, conocida como *Ley orgánica del Departamento de Asuntos del Consumidor,* 3 LPRA sec. 341, *et seq.,* (Ley del DACo) delegó en el DACo la responsabilidad de vindicar e implementar los derechos del consumidor. Entre las facultades y deberes

concedidas al Secretario del DACo se encuentra la de "atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía". *Íd.,* sec. 341e. Además, deberá vindicar los derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a derecho. *Íd.*

En virtud de ello, el Secretario del DACo promulgó el *Reglamento de Garantías de Vehículos de Motor,* Reglamento de Núm. 7159 de 6 de julio de 2006 (Reglamento Núm. 7159). El propósito de este Reglamento es proteger a los consumidores que invierten en la adquisición de vehículos de motor; procurar que estos sirvan para los propósitos para los cuales fueron adquiridos, reuniendo las condiciones mínimas necesarias para garantizar la protección de la vida y propiedad; y prevenir las prácticas ilícitas en la venta de vehículos de motor.

En lo pertinente a la controversia presentada ante nuestra consideración, el Reglamento Núm. 7159 dispone en su Regla 30.2, lo siguiente:

> Todo vendedor de un vehículo de motor usado, el cual haya sido impactado y reparado posteriormente, **deberá indicarlo verbalmente y notificarlo por escrito al consumidor en el contrato de compraventa**. Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 7159, 6 de junio de 2006, págs. 30-31. (Énfasis provisto).

### D. Contrato en General

El Código Civil de Puerto Rico, 31 LPRA sec. 1 et al, define la figura del contrato como "el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". Art. 1230 del Código Civil, 31 LPRA sec. 9751. El mismo cuerpo legal establece, además, que "[e]l contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el

cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva". Art. 1237 del Código Civil, 31 LPRA sec. 9771. Una vez las partes prestan su consentimiento, estos quedarán obligados al cumplimiento de la obligación pactada, pues "[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley". Art. 1233 del Código Civil, 31 LPRA 9754.

Así, para que un contrato se considere válido, se requiere que concurran tres elementos esenciales, a saber: (1) consentimiento de los contratantes, (2) objeto cierto del contrato y (3) la causa de la obligación que se establezca. Art. 1237 del Código Civil, *supra*; *Aponte Valentín et al v. Pfizer Pharm*, 208 DPR 263, 299 (2021). Respecto al requisito de consentimiento, nuestro Código Civil, supra, dispone que "[e]xiste consentimiento por el concurso de la oferta y de la aceptación cuando el oferente recibe la aceptación". Art. 1238 del Código Civil, 31 LPRA sec. 9772. Ahora bien, la invalidez es una sanción legal que, a través de una decisión judicial, priva a un negocio jurídico de sus efectos por adolecer de un vicio originario, esencial y propio al acto. Art. 341 del Código Civil, 31 LPRA sec. 6311. La invalidez puede invocarse por vía de acción o defensa. *Íd.* El Código Civil de Puerto Rico establece que un negocio jurídico puede ser nulo o anulable. Art. 342 del Código Civil, 31 LPRA sec. 6312. Un negocio jurídico es nulo si: 1) carece de consentimiento, objeto o causa; 2) la causa o el objeto son ilícitos; 3) carece de los requisitos de forma que exige la ley para su validez; o 4) contraviene la ley, la moral o el orden público. *Íd.* Por otra parte, un negocio jurídico es anulable "si el otorgante tiene incapacidad de obrar, si concurre algún vicio de la voluntad, o si el acto adolece de un defecto de forma no solemne". *Íd.*

El Código Civil de Puerto Rico, supra, establece que los vicios de la voluntad son: (1) el error, (2) el dolo, (3) la violencia y (4) la intimidación. Art. 285 del Código Civil, 31 LPRA sec. 6191. "El negocio jurídico en el que medie un vicio de la voluntad es anulable si el vicio fue determinante para su otorgamiento. El causante del dolo, la violencia o la intimidación queda sujeto a la indemnización de los daños y perjuicios resultantes". Art. 286 del Código

Civil, 31 LPRA sec. 6192. El Tribunal Supremo de Puerto Rico ha resuelto que existe "dolo" cuando, mediante maquinaciones insidiosas, una parte es inducida a celebrar un contrato. *Pérez Rosa v. Morales Rosado,* 172 DPR 216, 229 (2007).

Nuestro Código Civil define el dolo grave como la "acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado". Art. 292 del Código Civil, 31 LPRA sec. 6211. "Si la acción u omisión no provoca la realización del negocio jurídico, el perjudicado puede reclamar los daños y perjuicios que sufra". *Íd.* Por otra parte, el dolo incidental es aquél que no tiene una influencia decisiva en la esencia de la obligación. *Colón v. Promo Motor Imports, Inc,* 144 DPR 659, 667 (1997). En otras palabras, ya la parte tenía la voluntad de contratar, pero existe un engaño en el modo en que se celebra el negocio jurídico. Íd. O sea, que el dolo incidental solo facilita la celebración del contrato, ya que, sin este, el contrato de todas formas se hubiera celebrado, aunque bajo distintas condiciones. Íd. Este tipo de dolo no invalida el negocio jurídico, pero su autor debe indemnizar el daño causado, a menos que exista dolo recíproco. Art. 294 del Código Civil, 31 LPRA sec. 6213.

Ahora, para que el dolo produzca la nulidad del contrato, tiene que ser grave y no meramente incidental. *Pérez Rosa v. Morales Rosado, supra*, págs. 229-230. El dolo ha sido entendido como "todo un complejo de malas artes, contrario a las leyes de la honestidad e idóneo para sorprender la buena fe ajena, generalmente en propio beneficio". *S.L.G. Ortiz-Alvarado v. Great American,* 182 DPR 48, 63 (2011) citando a, L. Díez-Picazo, Fundamentos del Derecho Civil Patrimonial, 6ta ed. Navarra, Ed. Thomson/Arazandi, 2007, Vol. I, pág. 170. El elemento objetivo del dolo puede consistir en cualquier conducta como astucias, argucias, mentiras, sugestiones, artificios, invención de hechos falsos, ocultación de los existentes o en suministrar referencias incompletas de éstos. *S.L.G. Ortiz-Alvarado v. Great American,* supra, págs. 64-65. El dolo "se caracteriza como la infracción

voluntaria y consciente de un deber jurídico que ocasiona al otro contratante un perjuicio del que debe responder". Íd. pág. 68, citando a *Márquez v. Torres Campos,* 111 DPR 854, 865 (1982).

Las partes tienen plena libertad de contratación para hacer cualquier tipo de contrato, siempre que no sea contrario a la ley, la moral o el orden público. Art. 1232 del Código Civil, 31 LPRA sec. 9753; *Véase*, también, *Mun. de Ponce v. Gobernador,* 136 DPR 776 (1994). En virtud de lo anterior, el Art. 277 del Código Civil, 31 LPRA sec. 6161, dispone que cuando la ley no requiere una forma en particular para la realización de un negocio jurídico, se puede usar aquella que se estime conveniente. Sin embargo, si las partes han acordado que un negocio jurídico se formalizará de una manera en específico, el negocio jurídico no tiene validez si se hace de una forma diferente. *Íd.* Si la ley exige unos requisitos de forma particulares para la validez de este, la inobservancia de ellos produce su nulidad. *Íd.*

### E. Contrato de compraventa

Un contrato de compraventa surge cuando uno de los contratantes se obliga a entregar una cosa determinada y, el otro, se obliga a pagar por ella un precio cierto. Art. 1274 del Código Civil, 31 LPRA sec. 9941. En otras palabras, se trata de un contrato mediante el cual una parte transfiere o se obliga a transferir una cosa o derecho a la otra parte, a cambio de una suma de dinero. *Bco. Popular v. Registrador,* 181 DPR 663, 671-672 (2011), citando a Puig Brutau, Fundamentos de Derecho Civil, Tomo II, vol. II, 2da ed., Contratos en Particular, Bosch, Casa Editorial, S. A., Barcelona, pág. 119.

El Código Civil establece una serie de obligaciones para el vendedor, las cuales están reguladas por el Artículo 1287, según las cuales:

El vendedor está obligado a:

(a) entregar inmediatamente el bien con sus accesorios, libre de todo gravamen, en el lugar y el tiempo convenidos o donde se encuentre el bien en el momento del otorgamiento;

(b) transferir al comprador el dominio del bien;

(c) garantizar al comprador que el bien vendido tiene las cualidades prometidas y que está libre de defectos que disminuyen o destruyen su valor o la aptitud para su uso

ordinario o convenido. Una disminución insignificante del valor o la aptitud no se toma en cuenta.

Cuando un defecto principal se descubre dentro del período de la garantía, se presume que el defecto estaba ya presente en el momento que el riesgo pasó al comprador. La garantía se extiende durante el tiempo comprendido en el plazo de prescripción de la acción ejercitada por razón de la garantía o durante el tiempo que haya fijado el Departamento de Asuntos del Consumidor o cualquier otra agencia gubernamental;

(d) entregar al comprador todos los documentos que sirven para probar el dominio;

(e) proporcionar al comprador toda la información sobre el objeto vendido, especialmente la relacionada con los linderos, privilegios, y cargas;

(f) otorgar las escrituras públicas o privadas requeridas por los usos y las particularidades de la venta; y

(g) pagar los gastos de la entrega y del otorgamiento de las escrituras, a menos que sea la parte compradora quien escoja el notario autorizante, salvo pacto distinto. Art. 1287 del Código Civil, 31 LPRA sec. 9991.

Así, cuando el vendedor o comprador incumple con sus obligaciones, legitima al otro a optar por la resolución del contrato, conforme al artículo 1255 del Código Civil, 31 LPRA secs. 9823. J. R. Vélez Torres, *Curso de Derecho Civil: Derecho de Contratos*, San Juan, Universidad Interamericana de Puerto Rico, 2007, T. IV. Vol II, pág. 142. Las obligaciones de entregar una cosa y de pagar el precio son correlativas, por lo que generalmente una y otras son exigibles desde que se perfecciona el contrato. Íd., pág. 167.

En los casos de obligaciones bilaterales, como es el contrato de compraventa, una parte puede optar por la resolución del contrato si la otra no cumple con su obligación y puede darlo por resuelto sin necesidad de acudir a un tribunal. *Constructora Bauzá, Inc. v. García López,* 129 DPR 579, 593 (1991). En estas circunstancias, bajo el Nuevo Código Civil, el perjudicado debe exigir a la parte incumplidora el cumplimiento de la obligación, incluyendo el daño moratorio, bajo apercibimiento de su resolución total o parcial. Art. 1255 del Código Civil, 31 LPRA sec. 9823. Además, también puede reclamar el cumplimiento y el resarcimiento de daños. *Íd.* Cabe resaltar que, nuestro máximo foro ha resuelto que el incumplimiento de una obligación recíproca conlleva un efecto resolutorio

siempre que la obligación incumplida sea una esencial o que su cumplimiento constituya el motivo del contrato para la otra parte. *NECA Mortg. Corp. v. A&W Dev. S.E.*, 137 DPR 860, 875 (1995).

### F. El Contrato de Transacción

Por el contrato de transacción, mediante concesiones recíprocas, las partes ponen fin a un litigio o a su incertidumbre. Artículo 1497 del Código Civil, 31 LPRA sec. 10641. Se le ha definido como un "acuerdo mediante el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen fin a uno ya comenzado, con el propósito de evitar los pesares que conllevaría un litigio." *López Tristani v. Maldonado,* 168 DPR 838, 846 (2006). El contrato de transacción se interpreta restrictivamente. Artículo 1499 del Código Civil, 31 LPRA sec. 10643. La transacción produce el efecto de la cosa juzgada. Artículo 1500 del Código Civil, 31 LPRA sec. 10644.

Los contratos de transacción suponen la existencia de una controversia o relación jurídica incierta litigiosa y la intención de las partes de eliminar o superar esa controversia mediante concesiones recíprocas. *Rodríguez et al v. Hospital et al,* 186 DPR 889, 903 (2012). La finalidad de este tipo de contrato es evitar toda controversia entendida aquella como divergencia, disputa o debate, esto es, como situación en la que se encuentran dos personas que sostienen tesis diferentes respecto a una determinada relación. *Orsini García v. Srio. de Hacienda,* 177 DPR 596 (2009).[3] Por cuanto la transacción produce efecto de la cosa juzgada, *lo pactado por las partes debe considerarse como definitivamente resuelto y éstas no pueden volver sobre ello.* Art. 1500 del Código Civil, 31 LPRA sec. 10644; *Neca Mortg. Corp. v. A & W Dev. S.E., supra,* pág. 872.

Un contrato de transacción puede ser de naturaleza judicial o extrajudicial. *Rodríguez et al v. Hospital et al, supra.* La transacción judicial ocurre cuando ya comenzado el pleito, las partes llegan a un acuerdo

---

[3] Este caso fue revocado por fundamentos no pertinentes al contrato de transacción citado en esta parte.

transaccional y lo hacen incorporar al proceso en curso. *Íd.* Esto, a diferencia de una transacción extrajudicial, que se celebra antes de que comience el pleito que se quiere evitar, o una vez comenzado, las partes acuerdan una transacción sin la intervención del tribunal. Para la transacción extrajudicial bastará el mero aviso de desistimiento del pleito, aun cuando las partes sólo mencionen que se ha llegado a un acuerdo entre las partes. *Íd.*

Los elementos que constituyen este tipo de contrato son: (1) una relación jurídica incierta y litigiosa; (2) la intención de los contratantes de componer el litigio y sustituir la relación dudosa por otra cierta e incontestable, y (3) las recíprocas concesiones de las partes. *Demeter Int'l v. Srio. Hacienda,* 199 DPR 706, 729 (2018); *Mun. de San Juan v. Prof. Research,* 171 DPR 219, 239 (2007). El legislador impuso nuevos requisitos de forma al contrato de transacción bajo el Nuevo Código Civil. Ahora, el contrato de transacción, aparte de concurrir en él los elementos del consentimiento, objeto y causa, debe constar por escrito y estar firmado por las partes, o en una resolución o sentencia judicial. Art. 1503 del Código Civil, 31 LPRA sec. 10647. Igualmente, si la transacción se refiere a derechos constituidos mediante escritura pública, se requiere que el contrato de transacción conste en escritura pública también. *Íd.*

## III. Aplicación del Derecho a los hechos

Antes de comenzar la aplicación del Derecho a los hechos del caso de epígrafe, debemos resaltar que la discusión de los señalamientos de error del recurso de revisión judicial por parte del recurrente en el Acápite V, no sigue el mismo orden que el establecido en el Acápite IV.[4]

Como primer señalamiento de error, el recurrente sostiene que incidió el DACo al descartar que hubo una transacción entre las partes, pues la Sra. Rijos Figueroa acudió a Auto Amigo y aceptó las reparaciones del vehículo de motor en cuestión. No le asiste la razón. Veamos.

---

[4] Recurso de *revisión judicial,* págs. 9-15.

Como discutido anteriormente en el derecho esbozado, el contrato de transacción es aquel mediante el cual las partes ponen fin a un litigio o su incertidumbre, mediante concesiones recíprocas. Art. 1497 del Código Civil, *supra.* Igualmente, discutimos las diferencias entre una transacción judicial y una transacción extrajudicial. Una transacción judicial implica que las partes han llegado a un acuerdo y han puesto fin al litigio, luego de este haber comenzado. *Rodríguez et al v. Hospital et al, supra.* En cambio, una transacción extrajudicial se celebra antes de que comience el pleito que se quiere evitar, o una vez comenzado, las partes acuerdan una transacción sin la intervención del tribunal. *Íd.* Sin embargo, bajo el Nuevo Código Civil de 2020, para que un contrato de transacción sea válido, **tiene** que constar por escrito y estar firmado por las partes, o en la alternativa, debe constar en una resolución o sentencia emitida por un tribunal. Art. 1503 del Código Civil, *supra.* (Énfasis provisto).

En este caso no hubo de ninguna manera una transacción. No surge del expediente documento alguno que demuestre que las partes hayan llegado a un acuerdo para poner fin a la incertidumbre desarrollada tras la venta del vehículo de motor marca Hyundai, modelo Santa Cruz Limited. El Código Civil establece de manera diáfana que un contrato de transacción **tiene** que constar por escrito y estar firmado por las partes. El recurrente sugiere con su argumento que se consumó un contrato transaccional de manera tácita, pues la recurrida aceptó las reparaciones a su unidad. También sostiene que, tras la alegada transacción, se formalizó una novación. Bajo nuestro estado de Derecho vigente, no existe tal cosa como una transacción implícita.

Además, destacamos que, una vez la recurrida adviene en conocimiento sobre los defectos de hojalatería y pintura días después de adquirir el vehículo, esta acudió al concesionario y solicitó que se dejara sin efecto la compraventa y que se le devolviesen los autos que ofreció en intercambio. No obstante, Auto Amigo le expresó a la recurrida que ya habían vendido los vehículos. La Sra. Rijos Figueroa no tuvo otra opción mas que aceptar las

reparaciones de hojalatería y pintura. Por lo tanto, el primer señalamiento de error no fue cometido por el DACo.

Los siguientes cuatro señalamientos de error son susceptibles de discusión conjunta, por lo que así obraremos. En síntesis, aduce el recurrente que el DACo incidió: 2) al no tomar en cuenta que cumplió con su deber de saneamiento, 3) al actuar con perjuicio y parcialidad al descartar la prueba recibida por la recurrida y conceder un remedio extremo; 4) porque la acción redhibitoria alegadamente concedida estaba prescrita; y 5) al emitir una resolución que incorpora a un tercero que, alegadamente, no formó parte de los procedimientos ni fue notificado. No nos convence su postura. Veamos.

En lo pertinente al caso de epígrafe, el DACo fue creado con el propósito primordial de proteger, vindicar e implementar los intereses y derechos de los consumidores en Puerto Rico. Fue dotado con amplias facultades para, entre otros: dictar las acciones correctivas que fueren necesarias para cumplir con el mandato de su ley habilitadora de proteger a los consumidores; adjudicar las querellas que se traigan ante su consideración; conceder los remedios procedentes conforme a derecho, incluidas las compensaciones económicas, si procedieran; establecer las reglas y normas necesarias para la conducción de los procedimientos administrativos e interponer cualesquiera remedios legales que fueran necesarios para hacer efectivos los propósitos de la ley.

A raíz de ello, se promulgó el *Reglamento de Garantías de Vehículos de Motor,* Reglamento de Núm. 7159 de 6 de julio de 2006 (Reglamento Núm. 7159), cuyo propósito es proteger a los consumidores que invierten en la adquisición de vehículos de motor; procurar que estos sirvan para los propósitos para los cuales fueron adquiridos, reuniendo las condiciones mínimas necesarias para garantizar la protección de la vida y propiedad; y prevenir las prácticas ilícitas en la venta de vehículos de motor. Particularmente, la Regla 30.2 del precitado reglamento establece que "[t]odo vendedor de un vehículo de motor usado, el cual haya sido impactado y reparado posteriormente, **deberá indicarlo verbalmente y notificarlo por escrito al consumidor en el contrato de compraventa**". Reglamento de

Garantías de Vehículos de Motor, Reglamento Núm. 7159, 6 de junio de 2006, págs. 30-31. (Énfasis provisto).

Ahora, los vicios de la voluntad son el dolo, la intimidación, el error y la violencia. El Nuevo Código Civil regula el efecto de la existencia de un vicio de la voluntad y dispone que "[e]l negocio jurídico en el que medie un vicio de la voluntad es anulable si el vicio fue determinante para su otorgamiento. El causante del dolo, la violencia o la intimidación queda sujeto a la indemnización de los daños y perjuicios resultantes". Art. 286 del Código Civil, 31 LPRA sec. 6192. Respecto al dolo, la jurisprudencia aplicable ha dispuesto que este existe cuando con maquinaciones insidiosas, una parte es inducida a celebrar un contrato. *Pérez Rosa v. Morales Rosado,* 172 DPR 216, 229 (2007). El dolo grave es la "acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado". Art. 292 del Código Civil, 31 LPRA sec. 6211. Para que el dolo produzca la nulidad del contrato, tiene que ser grave y no meramente incidental. *Pérez Rosa v. Morales Rosado, supra,* págs. 229-230.

Surge del expediente ante nuestra consideración que la voluntad de la Sra. Rijos Figueroa estuvo viciada. Auto Amigo tenía la obligación de divulgarle a la recurrida de manera verbal que el auto fue impactado y reparado con anterioridad a la compraventa, y luego tenía que estipular esa información por escrito en el contrato, pero no lo hizo. El recurrente no solo incumplió con la Regla 30.2 del *Reglamento de Garantías de Vehículos de Motor,* sino que incurrió en dolo grave. No estamos en posición de variar las determinaciones de hechos contenidas en la *Resolución* recurrida, dirigidas a establecer que, de la Sra. Rijos Figueroa haber sabido esta información, no hubiese adquirido el vehículo de motor, lo que supone la configuración del dolo imputado.[5] En torno a este asunto el derecho aplicable es claro: cuando el dolo es grave, produce la nulidad del contrato. Si bien es cierto que la

---

[5] Apéndice del recurso de *revisión judicial,* pág. 41.

recurrida solamente solicitó la indemnización por parte del recurrente, lo procedente en este caso es declarar la nulidad del contrato de compraventa por estar presente el dolo grave.

Por otra parte, con respecto al argumento de que el DACo emitió una resolución que incorpora a un tercero que, alegadamente, no formó parte de los procedimientos ni fue notificado, expresamos que la *Resolución* objeto de este recurso solamente vincula al recurrente. Es Auto Amigo el responsable de indemnizar a la recurrida y de satisfacer lo adeudado a la entidad financiera, Oriental Bank.

En definitiva, concluimos que el recurrente no demostró la existencia de otra prueba que nos colocara en posición de superar la deferencia que debemos al ejercicio adjudicativo razonable efectuado por el DACo. La *Resolución* recurrida mostró rigor tanto en enumerar las determinaciones de hechos alcanzadas, como en la aplicación del derecho, y las razones de la concesión del remedio elegido, y no acontecen ninguno de los presupuestos que justificarían nuestra intervención con el dictamen recurrido.

## IV. Parte dispositiva

Por los fundamentos antes expuestos, se *confirma* la *Resolución* recurrida.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones